Robert M. LIVELY
v.
CONSOLIDATION COAL COMPANY.
Civ. A. No. 5906.

United States District Court
E. D. Tennessee, N. D.
June 22, 1967.

Paul E. Parker, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., for plaintiff.

W. Keith McCord, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

### ROBERT L. TAYLOR, Chief Judge.

This is a case arising under the Workmen's Compensation Law of Tennessee. Robert M. Lively, a man 50 years of age, with nine children, who has spent 31 years of his life working underground in coal mines, developed an occupational disease described by some doctors as silicosis and by others as pneumoconiosis and perhaps by others as both silicosis and pneumoconiosis.

Plaintiff was examined in 1964 by Dr. Rogers, a competent chest surgeon of Knoxville. At that time plaintiff stated to Dr. Rogers that he had been exposed to cable smoke and had developed some shortness of breath. Dr. Rogers caused to have made an X-ray of his chest and this X-ray disclosed nodules in his lungs. The doctor was of the opinion that the nodules were a manifestation of pneumoconiosis, but pulmonary studies of him were normal. He was of the opinion then, and so advised Mr. Lively, that he was able to return to the mines, which he did. The doctor advised him that his trouble may or may not progress, and advised him to have an X-ray annually. The doctor stated that his breathing capacity at that time was 120 per cent, that he did not have air trappings and did not have any disability.

Doctor Domm, associate of Dr. Rogers, examined plaintiff on May 13, 1965 when he was suffering with pains in his chest. Dr. Domm thought he had heart trouble. He believes that he told plaintiff that he had pneumoconiosis at that time. Again X-rays were made of his chest and no difference was found in his condition at that time from that found in 1964. His breathing was fine in 1965 but Dr. Domm was somewhat alarmed by the pain in his chest. As indicated he felt that this was a manifestation of a heart condition rather than of a chest condition. He nevertheless told plaintiff that he could return to the coal mine.

In 1967, Dr. Domm again examined plaintiff at which time his breathing was so very bad that it could not be measured on the machine. The lowest measurement that the machine recorded was 17 per cent, but that does not mean that the breathing was as low as 17 per cent at that time. It simply means that it was so difficult for plaintiff to breathe that he could not breathe with sufficient force into the machine for purpose of measurement by it.

In 1967, plaintiff had what is called air trappings which he did not have in 1964 and 1965.

Doctors Domm and Rogers were of the opinion that they told plaintiff of his condition in 1964 and 1965 although Dr. Rogers bases his testimony in this respect on custom and on a letter that he wrote to the United Mine Workers of America Welfare and Retirement Fund dated May 18, 1964.

In that letter he stated:

"Therefore, this man still has satisfactory pulmonary function. I do feel however that he does show X-ray evidence of soft coal workers pneumoconiosis. On the basis of this I think that he should be followed with yearly X-rays and yearly examinations. If his pulmonary function should begin to decrease or if his X-ray should show progression, I would think then it would be evidence for taking him out of the mines. At the present time, however, I have advised him to continue working."

Doctor Domm stated that he based his testimony that he advised him of his condition on custom alone. Neither of these men had any independent recollection of what they told plaintiff at the time of the respective examinations. This is entirely reasonable because it would be almost impossible for busy doctors to remember what they told a particular patient at a particular time. Plaintiff testified positively that he did not know that he had

pneumoconiosis or silicosis and that the doctors did not tell him that he had a manifestation of either disease.

The Court can reconcile plaintiff's statements with those of each of the doctors. The Court is of the opinion that each was sincere and truthful in the respective statements made by them. It is entirely reasonable to conclude that the doctors did tell plaintiff that he had nodules in his lungs and that this was an indication that conditions of a serious nature might follow. But it is hardly to be expected that a man with a fourth or fifth grade education would understand the significance of what was told him. The important point is that these qualified doctors told this coal miner that he was able to perform the duties of an underground coal miner in both 1964 and 1965; and he accepted their advice and returned to the coal mine where he worked continuously until 1967 when he finally broke down with this disease known as silicosis or pneumoconiosis. The doctors are in unanimous agreement that he is not now able to work in the coal mine.

Doctor Swann also examined plaintiff on January 25, 1967. His breathing capacity at that time was 65 per cent. He diagnosed his trouble as silicosis or pneumoconiosis with nodular fibrosis in his lungs. During the trial he pointed out, or tried to point out to the Court, the nodules in the X-rays. The pulmonary studies made on May 27, 1967 by Dr. Swann indicated that he had lost an additional 15 per cent of his breathing capacity in four months; his breathing capacity then being about 55 per cent of capacity.

 The first issue for the determination of the Court, as set forth in the pre-trial order, is whether the occupational disease of plaintiff arose out of and in the course of his employment. The mere statement of that issue in the light of what has heretofore been said in the discussion of the testimony of the doctors furnishes the answer. The answer is clearly yes.

The second issue is: "If plaintiff is entitled to recover, what is the amount?"

In that connection, the pre-trial order recites that "the one year statute of limitations may be an issue after discovery is completed." Counsel for defendant asserts with fervor that plaintiff is barred from recovery in this case by reason of the one year statute of limitations provided for in the Workmen's Compensation Act of Tennessee. In support of his position he relies upon the case of Adams v. American Zinc Company, 205 Tenn. 189, 326 S.W.2d 425. The Court held in that case that there was evidence to support the findings of the trial judge that plaintiff had knowledge more than two years before he instituted his suit that he had the disabling occupational disease of silicosis, and that therefore his suit was barred.

 That is not this case. The exact contrary is true. Plaintiff testified positively, and the Court believes him, that he did not have notice that he had an occupational disease which was disabling. On the contrary, he was advised by the two doctors who testified on the subject that he had nodules in his lungs but that he was not disabled by reason of that condition and each doctor stated he was able to return to work and so advised him.

The other case relied upon is that of Charnes v. Burk, 205 Tenn. 371, 326 S.W. 2d 657. The opinion was written by the late Chief Justice Prewitt, who held that even though the man had had serious trouble with a rash on his skin over a considerable period of time, it was not until the doctors finally diagnosed his trouble as occupational dermatitis that the statute began to run. In the opinion of the Court that decision does not preclude plaintiff's recovery in this case.

 Numerous cases are relied on by the plaintiff to support his position. They deal with the question, when the statute of limitations begins to run under the Workmen's Compensation Law. These cases show that Tennessee is committed to the doctrine that the statute begins to run from the occurrence of the injury or disability or from the time the employee first had reason to believe there was any particular seriousness

about his condition rather than from the date of the accident. This question is discussed in detail in the case of Imperial Shirt Corp. v. Jenkins, Tenn., 399 S.W.2d 757. See Griffitts v. Humphrey, 199 Tenn. 528, 288 S.W.2d 1; Travelers Insurance Co. v. Jackson, 206 Tenn. 272, 332 S.W.2d 674; Brown Shoe Co. v. Reed, 209 Tenn. 106, 350 S.W.2d 65; Patterson v. Bessemer Coal, Iron and Land Co., 192 F.Supp. 805, a decision by this Court; Central Motor Express Co., Inc. v. Burney, 214 Tenn. 118, 377 S.W.2d 947.

In the opinion of the Court, and the Court finds, that the plaintiff is not barred by the one-year statute of limitations.

This brings us to the final question in the case, namely, the extent of plaintiff's disability. The Court has hitherto discussed this question and further discussion is not deemed necessary. The Court fixes plaintiff's disability at 85 per cent, permanent partial.