Willis **BRAY**

v.

**CONSOLIDATION COAL COMPANY.**

**Civ. A. No. 6238.**

United States District Court
E. D. Tennessee, N. D.
June 20, 1968.

Paul E. Parker, O'Neil, Jarvis, Parker, & Williamson, Knoxville, Tenn., for plaintiff.

Keith McCord, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

## MEMORANDUM

The plaintiff, Willis Bray, filed this action to recover workmen's compensation benefits for an occupational dust disease. At the time he claimed that he became disabled to work, he was an employee of the defendant, Consolidation Coal Company. It is his theory that he developed the occupational coal dust disease from dust exposure in the defendant's mine, over a period of years. He worked for the defendant until September, 1967, following which he was hospitalized for some one or two weeks—or for several days, during which time his disability was diagnosed as occupational dust disease. He claims that he is permanently and totally disabled on account of the disease.

The defendant denies liability. The defendant admits, however, that plaintiff has pneumoconiosis. The testimony of the doctors indicated that pneumoconiosis is a lung disease which frequently, or sometimes, follows from breathing coal dust. The defendant says that in addition to the lung disease, plaintiff has a cardiovascular disease, or cor pulmonale, and other serious heart conditions, and that the heart condition and the lung condition combined have caused plaintiff's disability.

In support of this theory, the testimony of Dr. Acker, a recognized heart specialist, who examined the plaintiff in January, 1968, stated that he was of the opinion that fifty per cent of the plaintiff's disability was attributable to the heart disease.

Defendant further contends that the lung disease manifested itself in 1963, and that the statute began to run at that time, and that since the suit was not instituted until March 14, 1968, the one-year statute of limitations provided for in Section 50–1108 T.C.A. bars a recovery.

The issues for determination, which were stated in a pre-trial order, are as follows:

1. Does the statute of limitations bar the plaintiff's claim for compensation benefits?

2. What percent of disability is attributable to the plaintiff's occupational disease, and what percentage is attributable to the plaintiff's numerous heart diseases?

3. Did plaintiff fail to notify the defendant of the occupational disease within thirty days after he had knowledge thereof, and did that failure to notify prejudice the position of the defendant?

4. Is the plaintiff entitled to medical expense?

5. If a part of plaintiff's disability is because of heart trouble, was that trouble caused or contributed to by the plaintiff's occupational disease—dust disease?

The defendant had notice of the plaintiff's occupational disease within thirty days after plaintiff knew he was suffering with such disease, as shown by the claim for disability benefits filed by plaintiff with the Provident Accident Insurance Company on December 30, 1963. But aside from this notice which appeared to have been dated January 10, 1964, the defendant learned that plaintiff was off from work at that time.

The crucial question in the case is whether plaintiff was disabled by reason of an occupational disease in December, 1963. He was off from work at that time by reason of what his doctor described as "coal worker's pneumoconiosis and bronchitis." He returned to work on January 13, 1964 and continued to work until September, 1967, having lost time during that period due to sickness. Exhibit 3 lists the ailments for which plaintiff was treated prior to 1963 and after

that time. The list includes ulcers, flu, gastritis-neurogenic, prostatitis, fungus-crotch, canker sores, back pain, URI, arthritis in back, and auricular fibrillation.

On September 11, 1967, St. Mary's hospital records show: 1. HCVD with decompensation; 2. Auricular Fibrillation Chronic Obstructive Lung Disease. 9–30–67, shows a kidney infection. 10–4–67 shows Chronic Obstructive Lung Disease. 1–19–68 to 2–4–68, the hospital records show: 1. Chronic Obstructive Pulmonary disease; 2. Pulmonary Fibrosis with Severe Pulmonary Insufficiency and Arterial Desaturation. 4–16–68, kidney stones. This list of ailments was prepared by Dr. E. B. Smith, plaintiff's family physician.

Plaintiff was a coal miner who worked in the mines from the time he was eighteen years of age until he was stricken in September, 1967. He is now fifty-one years of age. He reached the fourth grade in school, and that is the extent of his education. He can sign his name, but cannot read. He is another coal miner who has exhibited extraordinary work qualities. His employer in its defense here today, has urged upon the Court that he should have quit work in 1963 when it was first discovered that he had this coal dust disease, and his failure to do so bars his right of recovery. The law should not penalize an employee for working a period of about four years under the conditions that plaintiff worked. Yet that would be the result if plaintiff's action is dismissed.

One purpose of the one-year statute of limitations in Workmen's Compensation Law is to protect the employer from payment of stale claims. Another is to give it a chance to investigate the claim when it arises. The employer in this case had as much knowledge about plaintiff's condition in 1963 as did the plaintiff.

The employer was not prejudiced by plaintiff's failure to quit work at that time in 1963 and apply for workmen's compensation benefits. He could not have collected workmen's compensation

benefits at that time unless he had been disabled.

In the opinion of the Court, plaintiff's claim is not barred by the one-year statute of limitations. In the case of Adams v. American Zinc Company, 205 Tenn. 189, at 194, 326 S.W.2d 425, at 427, the Court stated:

"It is for the same reason that our Courts hold that before the statute begins to run there must be *knowledge upon the part of the employee, or knowledge that he should have had, that he has an occupational disease and that it has affected his capacity to work to a compensable extent.*"

■ It is noted that in order for the employee to recover compensation benefits for an occupational disease, his disease must affect his capacity to work to a compensable extent. During 1963, plaintiff's occupational disease did not affect his capacity to work until September, 1967 when, according to his testimony, because of his inability to breathe he could not work longer in a coal mine, or could not work longer at any work involving manual labor. Moreover, he did not know that he had an occupational disease at that time. See Gluck Brothers, Inc. v. Pollard, Tenn., 426 S.W.2d 763, 766.

■■ Plaintiff testified unequivocally that he did not have any notice that he had an occupational disease until September, 1967 when he finally became disabled to the extent that he could not work. Soon thereafter, he approached his lawyer, Mr. Parker, who gave the thirty days required notice. No doctor in this record has indicated that he ever told plaintiff that he had this occupational disease described as pneumoconiosis. This is not unusual. It is common knowledge that it is often difficult for the patient to get information from the doctor concerning the nature and cause of his disability. It must be kept in mind in this case that we are dealing with a disease that is internal, and not a disease that can be seen with the naked eye, for example, a skin disease. When a person has a broken arm or other broken limbs, he has as much notice of his disability as does the doctor. See also the cases of Imperial Shirt Corp. v. Jenkins, Tenn., 399 S.W.2d 757; Griffitts v. Humphrey, 199 Tenn. 528, 288 S.W.2d 1; Travelers Ins. Co. v. Jackson, 206 Tenn. 272, 332 S.W.2d 674; Brown Shoe Company v. Reed, 209 Tenn. 106, 350 S.W.2d 65; Patterson v. Bessemer Coal, Iron and Land Co., 192 F.Supp. 805, a decision by this Court; and Central Motor Express Co., Inc. v. Burney, 214 Tenn. 118, 377 S.W.2d 947. These cases were cited in the case of Lively v. Consolidation Coal Company, D.C., 273 F. Supp. 357, in a memorandum opinion by this Court.

As previously indicated, there is no question about plaintiff's disability and the extent thereof. One question that has arisen is to what part of this disability is attributable to the plaintiff's heart disease and what part to his lung disease. The doctors are not in agreement on this question. Dr. Acker was of the opinion that there was no causal connection between the lung disease and the heart disease. There is testimony that plaintiff probably had what is referred to as cor pulmonale (heart disease secondary to disease of the lungs). If Dr. Gilbertson was right in this diagnosis, and the Court believes that he was, this would indicate that there is a connection between the lung disease and the heart disease.

■ In the opinion of the Court, and the Court finds that the plaintiff is entitled to recover for his lung disease, which was and is connected with his work in the coal mine, on a seventy-five per cent permanent partial disability. The Court fixes the disability at seventy-five per cent rather than one hundred per cent for the reason that a part of his trouble is due to the lung disease and the other part is due to heart disease.

■■ In addition to the seventy-five per cent disability, plaintiff is entitled to recover his medical bills in the sum of

$1,093.10. Defendant had notice of plaintiff's occupational disease within thirty days after he had notice thereof, and had he failed to give the 30-days notice such would not have prejudiced defendant's rights.

The medical services were necessary and no question is made about the reasonableness of the charges. Defendant's counsel wrote a letter to plaintiff suggesting that he select one of three doctors, but he did not agree to pay the bills of the one selected. On the question of payment of medical bills by the employer, the Supreme Court of Tennessee in the case of Charnes v. Burk, 205 Tenn. 371, 374–375, 326 S.W.2d 657, 658, said:

"It seems that the petitioner's claim for compensation is occupational dermatitis, and his right to recover doctor and drug bills incident to the diagnosis and treatment of the disease are not barred for failure to give his employer notice of his having the disease within thirty days after the first distinct manifestation thereof; nor are these claims barred for failure of petitioner to commence suit for his claims within one year after the beginning of the incapacity for work resulting from this occupational disease.   *   *   * "