R. C. Walker, Complainant, Appellant, *v.* Blue Ridge Glass Corporation, Defendant, Appellee.*

(*Knoxville,* September Term, 1932.)

Opinion filed November 26, 1932.

---

*As to partial and total incapacity or disability, see annotation in L. R. A., 1916A, 145; 17 A. L. R., 211, 212; 67 A. L. R., 789; 28 R. C. L., 820; R. C. L. Perm. Supp., p. 6243; R. C. L. Pocket Part, title "Workmen's Compensation," section 106.

Robert Burrow, John R. Todd and R. B. Dade, for complainant, appellant.

Kelly & Penn and Shelburne Ferguson, for defendant, appellee.

Mr. Justice McKinney delivered the opinion of the Court.

This is a compensation case in which the only controverted question is the extent of the disability suffered by petitioner as the result of an injury received when he was pushing a large piece of glass weighing probably five hundred pounds. The petitioner insists that he is permanently totally disabled, while the chancellor found that he was permanently partially disabled. We quote from the chancellor's finding as follows:

"That he is totally disabled by reason of the accident from performing the labor he was performing at the time of the injury is true, but the Court does not understand this to be the test of total disability under the Compensation Act, tho insisted by counsel for petitioner that it is, and that a recovery should be had on that basis.

"If the fact that the injuries incapacitated him from performing the work he was engaged in at the time of the injury, and yet was able to do other work, should constitute total disability, it would certainly be not only an unnatural and strange construction of the Act but an inducement to those injured to claim and rely upon total disability.

"It is not a question of being able to do the work in hand, but is he notwithstanding the injury able to do some work classed with that of ordinary manual labor, such as is in demand in ordinary times or conditions, not measured by times of general depression when even the willing and able workers cannot find employment.

"The petitioner is uneducated and must earn his support by manual labor, in other words a common laborer, and yet this fact could not operate to change the law as provided in the Compensation Act.

"It is true when a person is disabled from performing other than select jobs the burden is on the employer to show the existence and probability of obtaining such jobs, but from the record the Court reaches the conclusion that petitioner has not been totally disabled, but has suffered a 40% disability by reason of the injury and awards him a recovery on this basis as provided by the Compensation Act and for the time applicable to such cases, and decree will be so drawn."

We find evidence in the record to support the finding of the chancellor.

Dr. Tipton testified as follows:

"X 17. Do you think this man, in his condition is able to work? A. Light work.

"X 18. Can you be more definite than that—just what kind of work can he do? A. I could tell you better what he should not do. He should not go to the Meade Fibre and work on the wood yard.

"X 19. What could he do? A. He could do any kind of work that would not require lifting as much as 100 pounds.

"X 20. Do you know of any work of that kind? A. There is not very much work in Kingsport that he could not do; provided that he had treatment for his diabetes.

"X 21. You think he could go ahead and work at work that would run his heart up to 120? A. The average man's heart will run up to 120 when he is exercising.

"X 22. In his present condition, from all you saw of this man, would you say that he could put in regular work, even at light work? A. If he had treatment for his diabetes and get that cleared up, then he could."

Dr. Cox gave this testimony:

"Q. 9. Doctor, from your examination of Mr. Walker, what percentage of disability would you say you find him suffering from? A. He has a very small disability due to the recurrence of the hernia, or it is hardly a recurrence, and I think he possibly would not consider the other disability, maybe around fifteen to twenty-five per cent.

"Q. 10. You fixed the percentage of his disability at what? A. Fifteen to twenty-five per cent, somewhere in the neighborhood of that. He may have some pain in the region he complains of.

"Q. 11. Do you think he is unfit for ordinary manual labor? A. No, I think he could continue at the job he was working at, in fact, he did work from October 2d until in January with the hernia which he had, which was much larger than this condition that he has at the present time.

"Q. 12. At the time he had the operation? A. In January, 1930, he had the operation."

The petitioner testified that he applied to defendant for a job, which is a recognition of his ability to work.

In *White* v. *Coal Company,* 162 Tenn., 385, it was said:

"The authorities draw a distinction between cases in which it appears that the injured employe can do light work of a general nature and where he is only fitted to do 'odd' jobs, or special work, not generally available. In the former, the burden is on the petitioner, the presumption being that his inability to obtain employment is due to the fluctuations in the labor market and not to the consequences of the accident. In the latter, the burden is on the employer to show that such special work is available to the petitioner. The rule is admirably stated by Judge Moulton in *Cardiff Corp.* v. *Hall* (1911),

1 K. B., 1009, as follows: 'But, on the other hand, I am also of opinion that there are cases in which the *onus* of showing that suitable work can in fact be obtained does fall upon the employer who claims that the incapacity of the workman is only partial. If the accident has left the workman so injured that he is incapable of becoming an ordinary workman of average capacity in any well-known branch of the labor market,—if, in other words, the capacities for work left to him fit him only for special uses, and do not, so to speak, make his powers of labor a merchantable article in some of the well-known lines of the labor market,—I think it is incumbent on the employer to show that such special employment can, in fact, be obtained by him. If I might be allowed to use such an undignified phrase, I should say that if the accident leaves the workman's labor in the position of an "odd lot" in the labor market, the employer must show that a customer can be found who will take it.' " '

Applying this rule to the facts of this case as found by the chancellor, the petitioner can certainly do light work of an ordinary nature; hence the *onus* is not on defendant to show that petitioner can secure suitable work. In the White case it was shown that the petitioner could not perform any manual daily labor, although it appeared that he could fill a position as watchman. The court held that petitioner was only fitted to do "odd" jobs, or special work, not generally available, and that the employer had the *onus* of showing that such a position was open, which it had not done.

The average weekly wage of petitioner was $31.98. The chancellor allowed him 40 per cent of one-half that sum, or $6.40 per week for 300 weeks. This was correct, and his decree will be affirmed.