BILL CHARNES d/b/a BILL CHARNES ESSO SERVICE STATION and THE AMERICAN CASUALTY COMPANY, INC.

*v.*

KENNETH EUGENE BURK.

(*Nashville,* December Term, 1958.)

Opinion filed July 27, 1959.

McDonald, Kuhn, McDonald & Crenshaw, Memphis, for appellants.

Byrd, Hoffman, Migliara & Summers, Memphis, for appellee.

Mr. Justice Prewitt, delivered the opinion of the Court.

This is a Workmen's Compensation suit and on the hearing the trial judge found the plaintiff to be permanently, partially disabled to the extent of 25% to both hands and awarded compensation for 100 weeks at the rate of $30.00 per week, said payments to commence on

May 8, 1957, plus medical expenses in the amount of $209.47.

■ The principal question involved on this appeal is does the statute of limitations run from the date that petitioner first observed the rash on his hands, or does the statute of limitations run from the date that the doctor said to petitioner "that's no rash that's dermatitis."?

The petitioner was employed by an Esso Service Station. The duties of the petitioner, as a service station attendant, included greasing and oiling automobiles, washing and polishing cars and cleaning windshields; dispensing oil, gasoline and kerosene; servicing car batteries, radiators and tires; performing minor mechanical repairs to automobiles and their parts. All of these duties involve the use of various types of strong soaps, chemical compounds and detergents, as well as contact with petroleum products.

It seems in the month of May, 1955, the petitioner for the first time, had rash on his hands and arms, while performing his duties at the filling station.

It appears that this condition was not bad in the beginning but gradually grew worse. All along the petitioner was using home remedies.

It seems that petitioner finally consulted Doctor Cohen, the first time on February 22, 1956, and the Doctor told him that he was a victim of dermatitis.

It appears that the diagnosis was the first knowledge that petitioner had that his ailment was occupational dermatitis. He filed his petition for compensation February 15, 1957.

It seems that before the diagnosis of Doctor Cohen, the petitioner had no knowledge what caused his trouble or really what it was.

It will be observed that petitioner brought his suit within one year from the date he was advised by Doctor Cohen that he had dermatitis.

■ We think there is material evidence to show the petitioner has a disability of 25% and there seems to be no question but what his injury arose out of and in the course of his employment. Section 50-1007 (c) T.C.A. is as follows:

"(c) Permanent Partial Disability. In case of disability partial in character but adjudged to be permanent, there shall be paid to the injured employee, in addition to the benefits provided by sec. 50-1004, the following: (1) sixty per cent (60%) of his average weekly wages for the period of time during which he suffers temporary total disability on account of the injury, the same being subject to the same limitation as to minimum and maximum as provided in subsection (a) of this section, and (2) in addition to the foregoing he shall receive sixty per cent (60%) of his average weekly wages in accordance with the schedule hereinafter set out, provided, that the compensation paid the injured employee for the period of temporary total disability shall not be deducted from the compensation to be paid under said schedule."

It also appears that petitioner is to some extent untrained and unequipped for any other type of work.

It seems that the petitioner's claim for compensation is occupational dermatitis, and his right to recover doc-

tor and drug bills incident to the diagnosis and treatment of the disease are not barred for failure to give his employer notice of his having the disease within thirty days after the first distinct manifestation thereof; nor are these claims barred for failure of petitioner to commence suit for his claims within one year after the beginning of the incapacity for work resulting from this occupational disease. T.C.A. Sections 50-1107, 50-1108; *Wilson v. Van Buren County,* 198 Tenn. 179, 278 S.W.2d 685; *Holeproof Hosiery Co. v. Wilkins,* 194 Tenn. 683, 254 S.W.2d 973.

■ It is also insisted that the physicians testified that if the petitioner quit his present employment and went into some other line of work this dermatitis would heal.

Now, it appears this man is unskilled but has worked as a filling station employee for about seventeen years.

We do not seem to have a case on this question but we do have two cases from Arkansas, one, *Arkansas National Bank of Hot Springs v. Colbert,* 209 Ark. 1070, 193 S.W.2d 806, wherein a judgment was given the employee on the facts that she was a bank teller for more than seventeen years; that she had contracted dermatitis from handling nickel particles and carbon paper and was unable to engage in her normal employment without aggravating the condition of her skin, and in *Lamar Bath House v. McCloud,* 209 Ark. 1078, 193 S.W.2d 809, wherein a masseur of fifteen years experience contracted dermatitis from coming in contact with alcohol, talcum powder and other substances used at his trade and it was shown that the employee obtained some recovery when he was away from the said irritants but that the dermatitis returned upon his return to work. The award

in the latter case was based on the fact that the employee's hands were rendered virtually professionally useless in that the dermatitis returned when the employee worked only moderately.

In *Walker v. Blue Ridge Glass Corp.*, 165 Tenn. 287, 54 S.W.2d 722, 723, the Court quoted with approval from an English case wherein it was said ''I think it is incumbent on the employer to show that such special employment can, in fact, be obtained by him.''

In other words, the burden is upon the employer to show that a different type of work is available and tendered to the employee.

It is also complained that the trial court should not have found 25% permanent disability to the two hands.

Section 50-1007 T.C.A. it is provided ''For the loss of two (2) hands, sixty (60%) per cent of average weekly wages during four hundred (400) weeks.''

The Court in so holding was properly following the law set down in *Griffith v. Goforth,* 184 Tenn. 56, 195 S.W.2d 33, wherein the Court at the finding of permanent partial disability to two or more members made its award under the combined injury schedule even so far as to exceed the amount payable for a total and permnent disability to the whole body. See also *Liberty Mutual Insurance Company v. Maxwell,* 164 Tenn. 1, 46 S.W.2d 67.

We have considered all assignment of errors, find them without merit and the judgment of the lower court is affirmed.