Clyde **WORMSLEY**

v.

**CONSOLIDATION COAL COMPANY.**

**Civ. A. No. 6090.**

United States District Court
E. D. Tennessee, N. D.

Dec. 13, 1967.

Paul E. Parker, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., for plaintiff.

W. Keith McCord, Knoxville, Tenn., for defendant.

## OPINION AS RENDERED
## FROM THE BENCH

ROBERT L. TAYLOR, Chief Judge.

This case presents the recurring question of when the Statute of Limitations begins to run in a workmen's compensation case.

Plaintiff Wormsley was a coal miner at the time of the onset of the claimed occupational disease which is the subject of this lawsuit. He started to work as a coal miner when he was 14 years of age and continued to work until September 29, 1966. All of his coal mining work was performed for two other coal operators other than that which was performed by him from January 10, 1965 until September 29, 1966, which is the period that he worked for the defendant, Consolidation Coal Company.

Plaintiff was a machine helper which involved the using of a machine to cut coal. He worked in mines with ceilings averaging approximately four feet. In the cutting of the coal he often ran into rock which was necessary to cut in order to get to the coal. He was of the opinion that the rock was sandstone but Mr. Sampson, the safety director of the defendant, was of the opinion that it was slate and that the slate was free from silica.

The company spread sand on the mine tracks, which were used for hauling of coal from within the mines. Approximately 40 tons of sand were used a week, according to Mr. Sampson. At times spillage of sand accumulated on the tracks and this created dust. If, while riding a trip train through the mine, as was frequently done by plaintiff, and the train on which he rode was behind another train, the workmen on the rear train were faced with a considerable amount of dust.

Before plaintiff started to work for defendant on January 10, 1965 he was examined by the defendant's physician and presumably found to be free from disability. After he worked for about six or seven months he told Dr. Swann and possibly other persons that he developed a shortage of breath. He stated to one of his doctors that this started at least one year prior to September 29, 1966, the date he quit work.

Soon after he began to have physical troubles he contacted his family physician, Dr. Diamond, who examined him and treated him with medication in the form of pills over a period of time. He understood from his relationship with Dr. Diamond that he was suffering from high blood pressure which he thought would subside and which was not of sufficient severity to cause him to quit work. The pills which Dr. Diamond prescribed improved his condition to the point where he continued to be able to perform his work.

On September 29, 1966 plaintiff decided that he was no longer able to work in a coal mine and sent his brother to defendant's business office to procure forms to file with the United Mine Workers of America for his union pension.

In due course plaintiff filed for his pension and was paid at the rate of $100.00 per month.

In the spring of 1967 he undertook to make a garden. His condition had presumably improved after he left the coal mines or at least he thought it had improved or he would not have undertaken to do the physical work which gardening entails.

After plaintiff started this work he couldn't continue with it because of shortness of breath and weakness brought about by coughing. In due time he undertook to mow his yard but met with the same difficulty.

Finally someone, it is not clear who, but that is not important, directed him to Dr. Swann, a chest specialist of Knoxville. Plaintiff stated he had heard of Dr. Swann or had inquired about him from friends and that which

he had heard indicated that Dr. Swann was a highly competent chest surgeon.

On July 19, 1967 he was examined and X-rayed by Dr. Swann. On that date he was admitted to a hospital where he stayed until July 27, 1967. He was asked to return to the office of the doctor within about three weeks. He did return when for the first time he learned that his condition was diagnosed as silicosis.

As a result of his trouble his chest closes up and he has difficulty in getting his breath; he undergoes severe pain across the chest. Oftentimes in the morning he awakens with a severe cough which weakens his physical condition materially. He suffers with headaches and when the weather changes, especially when it is cloudy, his condition worsens. His sleep is affected. He has not worked and has not been able to work since September 29, 1966.

At the time he quit work he was making $29.68 per shift. The wage scale has increased since that time. He did not notify the defendant that he was quitting his work; he did not tell his employer that he was not able to work until his attorney, Mr. Parker, wrote his employer a letter dated August 22, 1967, setting forth his disability and making a claim under the workmen's compensation law. Plaintiff filed suit in this court on September 11, 1967.

The notice of his claim was well within the 30 day period after he first learned of his silicosis and the suit was filed within the one year period from that date.

Plaintiff complained of shortness of breath to Dr. Swann and advised him that he quit work because he felt that he was disabled. The X-rays showed nodular fibrosis. In addition to the X-ray a broncoscopy was made and this showed bronchitis, and in addition to the bronchitis he has emphysema. In the opinion of Dr. Swann these troubles stem from breathing of dust.

The Court therefore concludes that plaintiff's diseases are occupational and causally connected with his work for the defendant.

Dr. Swann was also of the opinion that plaintiff was suffering from silicosis and that he has not been able to work in a coal mine since September 29, 1966. He has not performed any physical work since that date. He was recently examined by Dr. Obenauer at the instance of the defendant. Dr. Obenauer did not testify.

The Court finds as a fact that plaintiff is suffering from silicosis and emphysema and bronchitis and that these arose out of and in the course of his employment with the defendant.

This brings us to the legal question which has been argued extensively by the attorneys for the respective parties.

Plaintiff's attorney contends that he is not barred by the 30 day notice provision in the statute or by the one year statute of limitations. He further contends that the thirty day notice provision and the one year statute of limitations did not begin until plaintiff was advised by Dr. Swann that he was suffering with silicosis.

Defendant's attorney contends that plaintiff's case is barred by the 30-day notice provision and one year limitation provision written into the Tennessee Workmen's Compensation Act. This contention is based upon the premise that the undisputed proof shows that plaintiff actually knew of his physical troubles or, if mistaken in this, by the exercise of ordinary care should have known that he was suffering with lung disease caused from dust at least one year prior to September 29, 1966. The evidence shows that plaintiff was suffering from shortness of breath at least a year prior to the time that he quit work.

The first Tennessee case cited by counsel for the plaintiff is that of Imperial Shirt Corporation v. Jenkins, Tenn., 399 S.W.2d 757, decided January 5, 1966. In

that case the Court observed that the Workmen's Compensation Act contemplates liberality not only in admission of evidence but also in inferences to be drawn therefrom and in borderline cases the Court should endeavor to carry out the beneficent object of the act and resolve doubts in favor of the working man. Plaintiff in that case suffered with a back injury for some two years before it was diagnosed by a physician as a herniated nucleous pulposus. The claimant in that case continued to work with the backache all during that two year period, but the Court held that the Statute of Limitation did not start to run until his trouble was diagnosed by the physician.

In that connection the Court said, "This man was an uneducated, ignorant type of person and he really had no knowledge about Workmen's Compensation or anything of the kind. (The same may be said about the plaintiff in this case.) Compensation, that is Workmen's Compensation, is not provided for pain, but this man suffered off and on, but compensation is for loss of wages and this man lost no wages until he went to the *doctor who finally determined* what was wrong with him and then when he went back to work he was given his dismissal stub. It was then he first realized that he was maybe entitled to some kind of compensation. Obviously, *he could not see any reason to make a claim or give any notice or file suit or anything of the kind until his wages were cut off*, and he then determined that this accident had caused him the permanent injury."

In the case under consideration plaintiff's wages did not stop until he quit work in September, 1966. At that time he did not have any knowledge that he was suffering with silicosis. He did have knowledge that he had shortness of breath but there is no evidence that he knew that shortness of breath, coughing, or weakness or symptoms of that nature were symptoms of a dust disease in his lungs which, as previously indicated, Dr. Swann characterized as silicosis. The proof is reasonably clear that at that time plaintiff felt that his trouble was high blood pressure which he did not consider as serious and which he hoped and believed would subside within a short time. Plaintiff labored with that hope for some twelve months but finally decided that he could no longer do work in a coal mine. This is characteristic of the average coal miner. He will usually work as long as he is able to work in order to provide for his family.

The next case cited by counsel and which counsel states is the latest case on the subject is that of Jones v. Lenoir City Car Works, 216 Tenn. 351, 392 S.W.2d 671.

The Court observed in that case that the claimant made a statement to the insurance company claim agent that he had shortness of breath, and that he had had shortness of breath for about five or six years and that it had grown progressively worse. He also stated that he always thought this condition was caused from inhaling the silica dust. An extended quotation from the testimony of claimant is set out in the opinion. In that testimony he stated that he thought his trouble was in his lungs because they kept hurting; at one point he stated he thought his lung trouble was caused from inhaling dust. He was told by Mr. Griffith on two or three occasions that he had a cavity in his right lung. When he was told that there was something wrong with his lungs he concluded that he had an occupational disease. He was aware of the occupational disease more than a year prior to the institution of his suit.

After quoting this testimony the Court concluded at pages 361–362, 392 S.W.2d at page 675, "From the foregoing admission and other testimony of petitioner, it is apparent petitioner knew he had a spot and silica dust on his right lung almost four years prior to the filing of his petition in December 1963; that he

thought he had an occupational disease; that it was necessary for him to rest at intervals during his working hours; and that due to the condition of his lung his capacity to work had been affected."

There is no evidence in this case that plaintiff knew he had a spot or silica dust on his right lung or that his disease was occupational until advised by Dr. Swann. The facts in the Jones case may be easily differentiated from the facts in the case under consideration.

In the case of Adams v. American Zinc Company, 1958, 205 Tenn. 189, 326 S.W.2d 425, the Court observed that it is the injury from an occupational disease rather than the disease which entitles the employee to compensation. In that case the trial court found, and was sustained by the Supreme Court, that the proof showed that the employee had notice that he had a disabling occupational disease, silicosis, more than two years before he instituted his suit, hence his suit was barred by the one year statute of limitations.

In Whitehead v. Holston Corporation, 1959, 205 Tenn. 326, 326 S.W.2d 482, the Court held that the employee could not successfully claim workmen's compensation benefits until he had reliable information that his condition was a result of an occupational disease.

In that case it appeared that the employer's doctor knew of the employee's true condition but did not reveal it to him and the employee was excused from notifying the employer in writing of his occupational disease.

In the case of Charnes v. Burk, 205 Tenn. 371, 326 S.W.2d 657, a claim for dermatitis was made. The Court observed that the statute of limitations did not start to run when the employee observed rash on his hands which he tried to cure with home remedies but rather from the date that the doctor informed him for the first time that it was not rash but occupational dermatitis.

In the case of Griffitts v. Humphrey, 199 Tenn. 528, 288 S.W.2d 1 (1955), it was held that an action for workmen's compensation benefits must be brought within one year from the date of injury, and that date of injury must be liberally construed so that the limitation of one year begins to run from the time of compensability or loss rather than the time of the accident.

Finally, in the case of Patterson v. Bessemer Coal & Iron Company, 1961, D.C., 192 F.Supp. 805, a case decided by this Court, the rule was reaffirmed that the statute of limitations under the Workmen's Compensation Act does not begin to run until the disability is known by the employee.

■ This brings us to the final problem in the case, namely, the extent of plaintiff's disability. The Court was impressed by the answer of Dr. Swann to this question by counsel for the defendant. Dr. Swann stated in effect that a proper answer to the question was difficult. This caused the Court to observe that if the answer to the question was difficult for the doctor it was also difficult for the Court.

The Court finds from the evidence that the plaintiff has sustained a 75% permanent partial disability to the body as a whole by reason of his occupational disease which arose out of and in the course of his employment for the defendant.

■ Plaintiff is also entitled to recover his medical expenses not to exceed the amount permitted by the Act. See Charnes v. Burk, 205 Tenn. 371, 374–375, 326 S.W.2d 657.

■ The Court also finds that plaintiff gave notice of his disability within 30 days after he first learned of his disease and that he commenced his suit within one year after his cause of action accrued.