**Clyde WORMSLEY, Plaintiff-Appellee,**

v.

**CONSOLIDATION COAL COMPANY, Defendant-Appellant.**

**No. 18614.**

United States Court of Appeals
Sixth Circuit.

March 3, 1969.

W. Keith McCord, Knoxville, Tenn., for appellant, Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., of counsel.

James H. Jarvis, Knoxville, Tenn., for appellee, Paul E. Parker, Knoxville, Tenn., on the brief, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., of counsel.

Before WEICK, Chief Judge, and PHILLIPS and COMBS, Circuit Judges.

WEICK, Chief Judge.

Consolidation Coal Company has appealed from a judgment of the District Court awarding its employee, Clyde Wormsley (appellee) [1], disability benefits under the Tennessee Workmen's Compensation Statute for an occupational disease incurred in the course of his employment as a coal miner. Consolidation was a self-insurer.

The principal issue on appeal is whether the suit was barred by the statute of limitations, which provides in part:

"The right to compensation for occupational disease is forever barred unless suit therefore is commenced within one (1) year after the beginning of the incapacity for work result-ing from an occupational disease * * *." T.C.A. § 50–1108.

The District Judge, construing the statute and applying Tennessee decisions to the facts which he found, held that the statute did not begin to run until Clyde had been advised by his physician that he was suffering from the occupational disease, and that the suit was timely filed. 278 F.Supp. 698.

Clyde was a 59-year-old miner who had worked in the mines practically all of his life. He did not commence to work for Consolidation, however, until January 10, 1965, when he was given a physical examination, including an x-ray of his chest, by the company doctor. Presumably his physical condition then was good, as the record is silent on the subject. He was employed as a helper on a cutting machine, which cut into rock and coal and created dust.

In its operations, Consolidation spread sand on the mine tracks in order to increase the traction for cars hauling coal and men. The spillage of sand accumulated on the tracks and this too created dust. If more than one vehicle was on the tracks at one time going through the mine, the rear vehicle traveled through the dust created by the first vehicle. Clyde testified that he frequently rode in a rear vehicle and that a great deal of dust arose from the tracks.

During the course of his employment by Consolidation, Clyde became short of breath and suffered from dizziness. For these reasons, he quit work on September 29, 1966, and sent his brother to Consolidation's business office to procure forms which he filed with the United Mine Workers of America for a pension.

Clyde had consulted with his family physician, Dr. Diamond, who examined him and prescribed pills. Clyde testified that Dr. Diamond informed him that he was suffering from high blood pressure. The medication prescribed by Dr. Diamond cleared up the dizziness, and in the Spring of 1967 he attempted to do

---

1. Appellant will be referred to herein as Consolidation; and appellee will be referred to as Clyde.

garden and yard work. He could not continue doing this work because of shortness of breath and weakness re-sulting from coughing.

On July 19, 1967, Clyde was examined by Dr. Swann, a chest specialist, who hospitalized him until July 27, 1967. He was asked to return to the doctor's office in about three weeks for further consultation. On August 22, 1967, he was told that his condition was diagnosed as silicosis.

As a result of this condition, Clyde suffers from shortness of breath and severe pain across his chest. He often awakens in the morning with a severe cough which materially weakens him. His sleep is also affected due to his disease. He has not worked since September 29, 1966.

Clyde complained to Dr. Swann of shortness of breath, stating that he had the condition for approximately one year prior to the date of the visit to the doctor. X-rays indicated the existence of nodular fibrosis and other tests indicated that Clyde was suffering from bronchitis and emphysema. Dr. Swann was of the opinion that these afflictions resulted from breathing dust in the course of his employment. The doctor also stated that Clyde was not able to work in a coal mine nor was he able to do manual labor. Clyde was recently examined by Dr. Obenauer at the instance of Consolidation, but the doctor did not testify.

Clyde had not told his employer that he was quitting his work. Nor did he tell his employer that he was unable to work, until his attorney wrote his employer a letter, dated August 22, 1967, setting forth his disability and making a claim under the workmen's compensation law. This action was commenced in the District Court on September 11, 1967.

The District Court concluded that Clyde's lung ailments were causally connected with his work. The Court also held that Clyde sustained a 75% permanent partial disability to the body as a whole as a result of his occupational disease.

Consolidation contends that Clyde had reasonable grounds to know that he had an occupational disease, more than one year before he filed suit; that this action was barred by the one-year statute of limitations; and that the recovery of medical expenses in the amount of $950.90 is barred by Clyde's failure to give notice to his employer of his alleged disability prior to incurring said expenses, as required by Tennessee Code Annotated § 50–1004.

■ The Supreme Court of Tennessee has recently stated the applicable rule determining when the statute of limitations begins to run in occupational disease cases, as follows:

"It results before the statute of limitations in occupational disease cases begins to run there must be: First, an incapacity for work; Second, either actual or constructive knowledge an occupational disease is the cause of the incapacity for work. In relating the incapacity for work to the disease an employee is required to exercise reasonable care and diligence; and if he does not he could be charged with constructive notice." Tennessee Prods. & Chem. Corp. v. Reeves, 220 Tenn. 148, 415 S.W.2d 118, 119 (1967).

In Reeves the issue was whether the employee exercised reasonable care and diligence in discovering that he suffered from silicosis. After working as a coal miner for several years, the employee was discharged due to a reduction in the work force. In March or April, 1963, he noticed a shortness of breath but did not seek medical assistance. In late 1963 and early 1964, the employee applied for disability benefits from the Social Security Administration and a disability pension from the Veterans Administration. Both were granted. The employee had been treated for several years by a family physician, but was never informed that he was suffering from an occupational disease. In early 1965 he tried to obtain his medical report from Social Se-

curity Administration but he was refused. Finally, on April 8, 1965, he was examined by another physician and was told for the first time that he was suffering from the occupational disease, silicosis. Suit was filed on April 6, 1966.

The Court held that the employee had used reasonable care in attempting to discover the cause of his condition, and the action was therefore not barred by the one-year limitation. Id. at 120, 415 S.W.2d 118.

We followed *Reeves* in an opinion written for the Court by Judge O'Sullivan in Lively v. Consolidation Coal Co., 406 F.2d 523 (6th Cir. 1969).

There are other Tennessee occupational disease cases holding that recovery is not barred even though the action was not brought within a one-year period after the first manifestation of the symptoms of the disease. In these cases the claimant could not reasonably have known and did not in fact know that he was suffering from an occupational disease until he was so informed by a physician. The statute did not begin to run until the claimant was informed of his occupational disease. Duplan Corp. v. Wilson, 210 Tenn. 315, 317, 358 S.W. 2d 322 (1962); Whitehead v. Holston Defense Corp., 205 Tenn. 326, 335, 326 S.W.2d 482 (1959); Charnes v. Burk, 205 Tenn. 371, 373–375, 326 S.W.2d 657 (1959); Tinker v. Bessemer Coal, Iron & Land Co., 227 F.Supp. 710, 713 (D.C. Tenn.1964), *aff'd* Nos. 15,918–15,919, 6th Cir., March 26, 1965 (unreported).

In cases applying essentially the same test to ascertain whether the statute had begun to run but in which recovery was denied, it was determined from the evidence that the claimant knew for more than one year before suit was brought that he was suffering from an occupational disease. A. C. Lawrence Leather Co. v. Britt, 220 Tenn. 444, 414 S.W.2d 830, 418 S.W.2d 660 (1967) (gradual work injury); Jones v. Lenoir City Car Works, 216 Tenn. 351, 392 S.W.2d 671, 675 (1965); and Adams v. American Zinc Co., 205 Tenn. 189, 192, 326 S.W. 2d 425 (1959).

■ It is clear that the case before us is controlled by *Reeves*. As in *Reeves,* the issue here is whether the employee exercised reasonable care in discovering that he suffered from silicosis. Although it is true that Clyde suffered from the symptoms of silicosis for more than a year prior to the bringing of this suit, he believed that he was suffering from high blood pressure. His family physician apparently cleared up that condition, at least temporarily, and when Clyde later had difficulty in working in his garden due to shortness of breath, he consulted Dr. Swann, who informed him that he was suffering from silicosis. Clyde then knew for the first time that he had an occupational disease.

■ We are of the opinion that the finding of the District Court that Clyde did not have actual or constructive knowledge of his occupational disease until he was advised by his physician, is supported by substantial evidence and is not clearly erroneous. The suit was therefore brought within the statutory period.

■ Consolidation further contends that Clyde is not entitled to recover more than one hundred dollars in medical expenses because the employer was not given notice of the disability prior to the time these expenses were incurred. Consolidation relies on T.C.A. § 50–1004, which requires the employer to pay medical expenses of the employee "after notice" of the injury. The trouble with this contention is that an employee would be required to give his employer notice of an occupational disease of which the employee himself had no notice. It is argued that without giving such notice to his employer, an employee cannot recover the medical expenses necessary to diagnose his disease as occupationally caused and which are, therefore, compensable under the statute. The Supreme Court of Tennessee, in a case dealing with occupational lung disease, has stated (quoting from an earlier decision):

" 'No reasonable construction of law could require that complainant give

notice of a disability which he did not know existed or which did not in fact exist, or that he should file suit for a disability before he had suffered it.' " Wilson v. VanBuren County, 196 Tenn. 487, 493, 268 S.W.2d 363, 365 (1954).

Consolidation relies heavily on Rice Bottling Co. v. Humphreys, 213 Tenn. 8, 372 S.W.2d 170 (1963). The critical question in that case was—

" * * * whether employee having exhausted medical services offered by employer, yet feeling the need of further medical service, is justified in incurring further medical expense to be paid by employer, without consulting employer." *Id.* at 13, 372 S.W.2d at 173.

The Court in *Humphreys* noted that the language of Section 50–1004 requires the employer to furnish medical services free of charge to the employee and that the employee "shall accept the same" provided the employer designates three doctors, one of whom the employee may select. The Court stated:

" 'This language makes it clear that the intent of the statute was for the employee to certainly do not less than consult his employer before incurring the expenses called for by that statute if the employee expects the employer to pay for it.' " *Id.* at 12–13, 372 S.W.2d at 173, quoting from Procter & Gamble Defense Corp. v. West, 203 Tenn. 138, 145, 310 S.W.2d 175 (1958).

This policy of complying with the statutory terms so that the employer is given its statutory rights is clearly important, but these same cases recognize that there may be circumstances in which an employee may have a "reasonable excuse" for incurring further medical expenses without consulting the employer. In such circumstances the employer must pay for the reasonable medical expenses of the employee. Rice Bottling Co. v. Humphreys, *supra,* 213 Tenn. at 13, 372 S.W.2d 170; Procter & Gamble Defense Corp. v. West, *supra,* 203 Tenn. at 145,

310 S.W.2d 175; and Atlas Powder Co. v. Grant, 200 Tenn. 617, 622–623, 293 S.W.2d 180 (1956).

*Humphreys, West* and *Grant* each deal with an accidental injury where the employee initially used the medical services offered by the employer. In each of these cases the employee knew that he was suffering from an occupational injury. Certainly the concept of "reasonable excuse" is even more compelling where the employee seeks to recover expenses necessary for the diagnosis and treatment of an occupational disease theretofore not known to be occupationally related. See Lampley v. St. Paul Mercury Indem. Co., 201 Tenn. 458, 463–465, 300 S.W.2d 876 (1957).

■■ The Supreme Court of Tennessee has applied the concept of "reasonable excuse" in occupational disease cases as well as in accidental injury cases so as to excuse an employee's failure to give notice within the thirty-day period required by T.C.A. § 50–1004. Wilson v. VanBuren County, *supra,* 196 Tenn. at 493–496, 268 S.W.2d 363. Lampley v. St. Paul Mercury Indem. Co., *supra* 201 Tenn. at 363–364, 300 S.W.2d 876. Further, Tennessee law does not require this notice period, as applied to occupational diseases, to begin until the claimant knows or should know that he is suffering from an occupational disease. Wilson v. VanBuren County, *supra* at 493–494, 268 S.W.2d 363; see also Tinker v. Bessemer Coal, Iron & Land Co., *supra.*

The above rules place the case of Charnes v. Burk, *supra,* in proper context. In this case, the claimant noticed a rash on his hands and arms in May, 1955. The condition grew worse and the claimant consulted a doctor for the first time on February 22, 1956. The doctor told him that he was suffering from dermatitis. This was the first knowledge the claimant had that his ailment was occupational dermatitis. Suit was filed on February 15, 1957. The Court noted that the suit was brought within one year from the date when the doctor

advised him that he had dermatitis. *Id.* 205 Tenn. at 374, 326 S.W.2d 657. The Court, in discussing the questions of notice and the recovery of medical expenses, said:

"It seems that the petitioner's claim for compensation is occupational dermatitis, and his right to recover doctor and drug bills incident to the diagnosis and treatment of the disease are not barred for failure to give his employer notice of his having the disease within thirty days after the first distinct manifestation thereof; nor are these claims barred for failure of petitioner to commence suit for his claims within one year after the beginning of the incapacity for work resulting from his occupational disease." *Id.* at 374–375, 326 S.W.2d at 658.

Consolidation does not contend that Clyde's actions prejudiced it, nor that the expenses claimed by him are unreasonable. See Wilson v. VanBuren County, 196 Tenn. *supra* at 495, 268 S.W.2d 363.

Since it is clear that Clyde gave notice of his disability within thirty days after he learned of his disease, and commenced his action within one year after the cause of action accrued, he is entitled under Tennessee law to recover medical expenses incurred in the diagnosis and treatment of his disease. Thus the "reasonable excuse" rule and the "knew of or should have known" rule combine to authorize recovery in this case. The opposite result would place an unreasonable interpretation upon the law.

Finally, this result is consistent with the mandate that this statute be interpreted liberally in favor of persons entitled to its benefits so that the purpose and intent of the statute is fulfilled. T.C.A. § 50–918; Smith v. Tennessee Furniture Indus. Inc., 212 Tenn. 291, 309–310, 369 S.W.2d 721 (1963); Clendening v. London Assur. Co., 206 Tenn. 601, 606–607, 336 S.W.2d 535, 337 S.W.2d 603 (1960); Maxwell v. Beck, 169 Tenn. 315, 317, 87 S.W.2d 564 (1935).

Affirmed.