Wilbert **WORMSLEY**, Plaintiff-Appellee,

v.

**CONSOLIDATION COAL COMPANY,** Defendant-Appellant.

No. 18662.

United States Court of Appeals Sixth Circuit.

March 3, 1969.

W. Keith McCord, Knoxville, Tenn., for appellant, Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., of counsel.

James H. Jarvis, Knoxville, Tenn., for appellee, Paul E. Parker, Knoxville, Tenn., on the brief, O'Neil, Jarvis, Parker & Williamson, Knoxville, Tenn., of counsel.

Before WEICK, Chief Judge, and PHILLIPS and COMBS, Circuit Judges.

WEICK, Chief Judge.

This is an appeal from a judgment of the District Court awarding workmen's compensation benefits and medical expenses under Tennessee law to Wilbert Wormsley, appellee,[1] for an occupational lung disease contracted by him during the course of his employment by Consolidation Coal Company, appellant.

Wilbert Wormsley is about 47 years old and has a fifth grade education. He has worked in underground mining since he was sixteen years old, and began working for Consolidation in June, 1964. He is a brother of Clyde Wormsley, appellee in the case of Wormsley v. Consolidation Coal Company, 408 F.2d 79 (6th Cir. 1969), which case was argued and submitted on the same day as this appeal. The brothers lived next door to each other.

When Wilbert began working for Consolidation he was given a physical examination and was x-rayed. No comment was made concerning the reports of the examination when he was employed, and the reports were not made available to him at any time during the course of this action.

The District Court found that Wilbert contracted an occupational lung disease which some of the doctors diagnosed as silicosis, or coal dust disease, and that this disease was causally connected with his work for Consolidation. The Court also found that the disease was not totally disabling and that Wilbert could perform other work not involving coal mining, or any other manual labor. The disability was fixed at 65% permanent partial to the body as a whole.

In this appeal, unlike Clyde's case, the statute of limitations is not an issue. Further, Consolidation conceded below that Wilbert does have an occupational disease.

Consolidation's discontent with the award of disability benefits focuses on Wilbert's prior recovery from it of workmen's compensation benefits for a neck

1. Appellant wil be referred to herein as Consolidation and appellee will be referred to as Wilbert.

injury. Consolidation contends that Wilbert's prior neck injury rendered him 100% disabled from working in a coal mine, and that he is therefore not entitled to recover an award of 65% permanent partial disability to the body as a whole because of an occupational lung disease.

The findings of the District Court are to the effect that Wilbert entered into a settlement agreement with Consolidation in July, 1967, with respect to his claim for a neck injury, which settlement was approved by the Chancery Court for Anderson County, Tennessee at Clinton.

The petition for approval of the settlement avers that there was a dispute as to whether or not Wilbert was injured in the course of his employment, and alleges that the parties were compromising and settling their disagreement and that Wilbert was to receive a sum of money "representing permanent partial disability to the body as a whole of twenty percent, * * * ."

Wilbert testified as to the facts concerning that injury, namely, that on March 15, 1967, while working in the mine, he was struck across the neck and shoulder by a large cable. While this incident had little effect at the time, he testified that adverse symptoms grew worse.

Dr. Smith testified that Wilbert suffered from a "hard disk" in his neck, which was pressing a nerve; and that Wilbert complained of pain in his neck and weakness in his shoulder and left arm. The doctor described the pain as severe, and the weakness as moderate.

Dr. Smith performed an operation to relieve these conditions. Wilbert was discharged from the hospital on April 26, 1967. Dr. Smith evaluated his disability as of July 19, 1967, to be 20% to the body as a whole, and further that Wilbert "was not capable of working in low seamed coal such as he had been previously doing and *to that extent* he was 100% disabled," (italics ours). He testified that Wilbert still experienced weakness in his left grip and some limitation of movement of his neck. These could, upon exertion, bring on pain. The doctor indicated that he considered the operation to have been partially successful because it relieved some of the pain in his left arm. He felt that Wilbert could possibly continue to improve.

Wilbert testified that the operation relieved the pain in his shoulder and arm. He also stated that his neck was still a "bit stiff," but that there was no longer any pain in his neck.

It is clear that Wilbert was not able to return to the arduous work in the coal mine which he previously had been doing. There is, however, no evidence in the record that as a result of his neck injury he was unable to perform light work in other industries. There is no evidence that he was totally and permanently disabled from engaging in all gainful activity. On the contrary, the record indicates that Wilbert suffered a permanent partial disability of only 20% as a result of his neck injury, and that he was still capable of doing sedentary or light work.

An employee is not entitled to recover total permanent disability benefits when he is capable of performing other work. Walker v. Blue Ridge Glass Corp., 165 Tenn. 287, 288, 54 S.W.2d 722 (1932). The fact that Wilbert could no longer do coal mining work would not have justified total disability benefits unless he was in fact incapable of doing other work.

Many Tennessee cases have allowed recoveries based on successive injuries to the same part of the body. Tomes v. Gray & Dudley Co., 201 Tenn. 697, 301 S.W.2d 389 (1957); Williams v. S. & W. Constr. Co., 167 Tenn. 84, 66 S.W.2d 992 (1934); Shelbyville v. Kendrick, 161 Tenn. 149, 29 S.W.2d 251 (1930); and Knoxville Knitting Mills Co. v. Gaylon, 148 Tenn. 228, 255 S.W. 41 (1923). In each case the court indicated that recovery would be allowed upon a showing that the first injury had not destroyed the entire usefulness of the part of the body involved. Further, the cases hold that there should be no reduction in the amount of recovery because of the previ-

ous injury. Tomes v. Gray & Dudley Co., *supra* 201 Tenn. at 701, 301 S.W.2d 389; Shelbyville v. Kendrick, 161 Tenn., *supra* at 152, 29 S.W.2d 251, and Knoxville Knitting Mills Co. v. Gaylon, 148 Tenn., *supra* at 229–230, 255 S.W. 41.

Tennessee court similarly treat successive injuries resulting in partial permanent disability to the body as a whole. American Cas. Ins. Co. v. White, 207 Tenn. 294, 300–301, 339 S.W.2d 15 (1960). In *White* the employee had sustained a back injury two years earlier while working for another employer and received compensation for 25% permanent disability to the body as a whole. Subsequently the employee received an injury from blood poisoning. The court noted that the employee was able to perform her work despite the back injury, and that after the blood poisoning she was further incapacitated. The court held:

"* * * [T]he Trial Court, in computing the award for the 25% permanent partial disability resulting from the second accident, did not err in declining to take into consideration the 25% permanent disability resulting from a previous accident." *Id.* at 301, 339 S.W.2d at 19.

The underlying premise in *White* is that the second injury further reduced the employee's earning capacity. The rule governing recovery for a disability is that there must have been a decrease in the employee's capacity to earn wages in any line of work available to him. American Surety Co. v. Kizer, 212 Tenn. 328, 335, 369 S.W.2d 736 (1963); Smith v. Tennessee Furniture Indus. Inc., 212 Tenn. 291, 309, 369 S.W.2d 721 (1963); McKenzie v. Campbell & Dann Mfg. Co., 209 Tenn. 475, 482, 354 S.W.2d 440 (1960); and Tinker v. Bessemer Coal, Iron & Land Co., 227 F.Supp. 710, 713 (D.C.Tenn.1964), *aff'd* Nos. 15,918–

15,919, 6th Cir. March 26, 1965 (unreported).

It appears from the record that Wilbert had a capacity to do sedentary or light work after the operation on his neck. This follows from the testimony of Dr. Smith and Wilbert, discussed above. It is clear that the occupational lung disease further reduced Wilbert's capacity to work. The District Court's award of disability benefits was, therefore, justified.

Consolidation contends that the District Court erred in awarding Wilbert the amount of his medical expenses incurred prior to the time that Consolidation received notice of his claim for compensation. This is the same issue which consolidation raised in Wormsley v. Consolidation Coal Co., supra, and it involves the interpretation of the language and intent of § 50–1004 of the Tennessee Code.

Consolidation does not challenge the District Court's finding that the first time Wilbert knew he was suffering from occupational lung disease was when he was told by his examining doctor. It is undisputed that by this time Wilbert had already incurred substantial medical expenses ($789.15) in the diagnosis and treatment of the disease. It is also undisputed that Wilbert's attorney wrote to Consolidation giving it notice of Wilbert's claim on the same day when he was told that he was suffering from silicosis.

For the reasons stated in our opinion in Wormsley v. Consolidation Coal Co., *supra*, we sustain the District Court's award of medical expenses. Wilson v. VanBuren County, 196 Tenn. 487, 493–496, 268 S.W.2d 363 (1954); Lampley v. St. Paul Mercury Indem. Co., 201 Tenn. 458, 463–464, 300 S.W.2d 876 (1957); and Charnes v. Burk, 205 Tenn. 371, 374–375, 326 S.W.2d 657 (1959).

Affirmed.