Claude COTTON, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY, Defendant-Appellant.

Ellis PHILLIPS, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY, Defendant-Appellant.

Sammie Everett CARROLL, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY, Defendant-Appellant.

Carvin SEIBER, Plaintiff-Appellee,

v.

CONSOLIDATION COAL COMPANY, Defendant-Appellant.

Nos. 71–1370, 71–1373, 71–1484 and 71–1485.

United States Court of Appeals, Sixth Circuit.

March 30, 1972.

Donald F. Paine, on brief, Knoxville, Tenn., for appellant; Egerton, McAfee, Armistead, Davis & McCord, Knoxville, Tenn., of counsel.

Paul E. Parker, on brief, Knoxville, Tenn., for appellees; O'Neil, Parker & Williamson, Knoxville, Tenn., of counsel.

Before KENT, Circuit Judge, O'SULLIVAN, Senior Circuit Judge, and ROTH,* District Judge.

O'SULLIVAN, Senior Circuit Judge.

Because of the similarity of their facts and issues, these cases were consolidated for argument and decision. They present appeals by Consolidation Coal Company from awards to the named plaintiffs of Workmen's Compensation Benefits under the laws of Tennessee. The cases were tried to United States District Judge Robert L. Taylor, sitting in the Eastern District of Tennessee, Northern Division. Each plaintiff had been a coal miner in the employ of appellant and each claimed to have become disabled by contracting pneumoconiosis —"black lung"—and Cotton also claimed a work connected injury to his back. Diversity of citizenship provided District Court jurisdiction.

### 1. Claude Cotton.

Plaintiff-appellee, Cotton, was forty-six years old at the time of trial in 1970. He had worked in underground coal mines for some twenty-one years. He had had two years of high school education and as a veteran and through a G. E.D. test, conducted by the University of Tennessee, was awarded the equivalent of a high school diploma. The evidence showed, however, that he was not qualified for any type of work other than manual labor.

Appellant, Consolidation Coal, had closed mining operations at its Devonia Mine on March 31, 1970. While working in that mine, Cotton became aware that his breath was getting shorter, but not to the point of totally disabling him in the work he was doing. His first knowledge that he had contracted the so-called "rock dust disease"—pneumoconiosis—came upon testing and examination by a Dr. William K. Swann, a specialist in thoracic surgery and diseases of the chest. This examination took place on July 14, 1970. Notwithstanding what such examination disclosed, and because of his expressed concern for the needs of his family, Cotton tried to resume his occupation as a coal miner at defendant's Mathews Mine. He went to work there on July 27, 1970, but quit after reinjuring his back on July 29. The injury to Cotton's back was an acute aggravation of a condition that had existed in 1968. Appellant charges that the District Judge erred in his findings as to the presence and degree of plaintiff's disabilities; that he disregarded undisputed material evidence as to plaintiff's back injury and his breathing capacity; that plaintiff's claim of disability for lung disease was barred by the statute of limitations; and that the District Judge erred in allowing recovery of the expenses of Dr. Swann's examination.

■ There was conflicting evidence by examining doctors as to the degree of disability visited upon Cotton by the pneumoconiosis. Dr. Swann testified that "as far as his usual occupation of underground coal mining is concerned, I would consider him [Cotton] permanent-

ly and totally disabled for that type of work." Cotton produced no medical evidence concerning his back injury. Appellant produced a doctor who had examined Cotton in 1968, and again after the July 29, 1970, injury. While this doctor testified that the 1970 episode had not increased his disability "over his previous treatment back in 1968," he said that Cotton had and will continue to have some disability insofar as heavy lifting, particularly in an awkward position, as would be required in underground coal mining. Further, this same doctor answered a relevant question as follows:

> "Q. But if he's worse [Cotton] after the July 27th and 28th episode, than he was before, would it be fair to say that that episode then caused this worsening of his condition?
>
> "A. Yes it would."

Cotton testified to the disabilities which followed his July, 1970, back injury. There was sufficient evidence, lay and professional, to permit the District Judge to conclude, as he did, that,

> "From observation of plaintiff and from the entire record the Court finds that plaintiff was under a temporary total disability during the period from July 29, 1970, until the trial on December 8, 1970, because of an occupational disease and an injury to his back, both of which arose in the course of and out of his employment.
> "The Court further finds that on account of this occupational disease and back injury plaintiff has a permanent partial disability of the body as a whole of 65%."

In Bray v. Consolidation Coal Co., 416 F.2d 1 (6th Cir. 1969), we recited the applicable rule in such Tennessee litigation as we deal with here.

> "The extent of disability is a question of fact and the trial court's findings are conclusive on appeal if supported by any substantial or material evidence. Armstrong v. Spears, 216 Tenn. 643, 652, 393 S W.2d 729, 733 (1964)." 416 F.2d at 3

■ Notwithstanding that appellant's medical witness discounted to some extent plaintiff's claim of disability, it was permissible for the District Judge to consider his own observations of the plaintiff and his own appraisal of relevant material testimony.

> "The Trial Judge not only heard the medical and lay testimony as to the condition of the petitioner but also saw and observed the petitioner at the trial. It has long been recognized that a lay witness may testify as to his own physical condition or that of another person provided such witness first states the detailed facts and then gives his conclusions. Norton v. Moore, 40 Tenn. 480, 486; Hamlin & Allman Iron Works v. Jones, 200 Tenn. 242, 246, 292 S.W.2d 27, 29." American Surety Co. v. Kizer, 212 Tenn. 328, 336, 369 S.W.2d 736, 740 (1963).

The evidence showed that Cotton was not aware of his pneumoconiosis until his examination by Dr. Swann on July 14, 1970. Injury to his back occurred on July 29, 1970. The required notice to his employer of a claim of compensable disability was given on August 4, 1970. In Bray v. Consolidation Coal Co., 416 F.2d 1, 2, we recited the Tennessee rule that the time within which notice is to be given and suit started begins to run only when there is,

> "[K]nowledge on the part of the employee, or knowledge that he should have had, that he has an occupational disease and that it has affected his capacity to work to a compensable extent." Adams v. American Zinc Co., 205 Tenn. 189, 194, 326 S.W.2d 425, 427 (1959).

Notice was given and suit was started within the mentioned time requirements.

■ The District Judge also allowed plaintiff the sum of $53.50 for the bill of Dr. Swann. Appellant objects. We have held that such allowance is proper. Wormsley v. Consolidation Coal Co., 408 F.2d 79, 85 (6th Cir. 1969).

We do not consider that Consolidation Coal Co. v. Pride, 224 Tenn. 188, 452 S. W. 349 (1970), calls for a different rule.

### 2. *Ellis Phillips.*

■ This appellee was fifty years old when his case was tried in December, 1970. He had worked in underground coal mining since he was eighteen years old. He had a seventh grade education and was qualified only for manual labor. He had worked at appellant's Devonia Mine until it shut down in March, 1970. His work in the mine had been earlier interrupted by service in the Army in the South Pacific Theatre between 1939 and 1945. Prior to the mine closing, Phillips had experienced some difficulty with his breathing. Phillips consulted a doctor who diagnosed his complaint as high blood pressure. He later consulted Dr. William K. Swann who sent him to the East Tennessee Baptist Hospital for tests and observation. He was there from July 26 to August 1, 1970. The difficulties from which he was suffering were diagnosed as rock dust disease—pneumoconiosis. Dr. Swann stated:

"I would consider him permanently and totally disabled for his usual occupation of underground coal mining. * * * He perhaps could do some manual labor, but I am sure he would feel short of breath. He would give out because of shortness of breath before a normal person would."

Appellee testified that he was not totally disabled and could do some light work. There was some conflicting medical testimony. The District Judge observed Phillips' appearance. This was his conclusion:

"The Court observed Mr. Phillips while he was on the witness stand. His color and mannerisms do not indicate that he is a well man. The Court finds that he is suffering with silicosis or dust disease that is connected with his work that he performed in defendant's mine.

"The Court further finds that he gave notice of his disability to the defendant on August 6, 1970, or within thirty days after he found out, or should have found out, that he was suffering from an occupational disease.

"The Court is of the opinion and finds that Mr. Phillips has suffered an 80 percent permanent partial disability and is also entitled to recover for medical bills incurred prior to September 11, 1970."

Appellant raises substantially the same questions as in the *Cotton* case. For the reasons as set out in our discussion of that case, we find no reversible error in the District Judge's ruling.

### 3. Sammie Everett Carroll.

■ Appellee Carroll, fifty-seven years old at the time of trial in February, 1971, had worked in underground coal mines for about 39 years. He could sign his name, but otherwise could neither read nor write. On December 26, 1969, Carroll had quit work and begun drawing a pension of $150 per month. His earnings at that time were about $150 per week. He testified that difficulties that he was experiencing with his breathing were among the elements that prompted him to take an early retirement. He testified that his breathing problems, a cough and general physical difficulties grew worse as time went on. He had seen a doctor who prescribed medication for him without providing relief. He was not aware of the real cause of his troubles until in September of 1970 when, upon examination by Dr. Swann, he learned that he had rock dust disease—pneumoconiosis. Notice of this diagnosis was given to the company within 30 days of Carroll's first awareness of his difficulty. He brought suit within the year provided by the Tennessee Statute of Limitations. Dr. Swann testified:

"He [Carroll] is disabled. I think totally disabled for his usual occupation for underground coal mining. He has some disability for any job that requires continuous manual labor. He should be able to do work that was

sedentary or that did not require him to hurry a great deal without too much difficulty. * * * I would say he is at least 50 percent disabled as to manual labor. *I really believe he would not be able to hold a job.*" (Emphasis supplied.)

Carroll's wife testified to her observations of the sufferings and disabilities that came with the advance of her husband's illness. The District Judge also observed Carroll and took account of his apparent lack of health and strength. The appellant offered some medical and lay testimony which put in issue plaintiff's claims, but we do not find that the District Judge disregarded "undisputed material evidence concerning the plaintiff's alleged disability."

The District Judge entered judgment, including the following:

"Among other things the Court found that the plaintiff is suffering from occupational dust disease or silicosis arising out of and in the course of his employment by the defendant; that his permanent partial disability from said disease is seventy-five (75%) percent to the body as a whole; that the defendant was given notice within 30 days of the plaintiff's first knowledge of his occupational disease and that suit was instituted within one year thereafter.

"It is, therefore, ORDERED, ADJUDGED and DECREED that the plaintiff, Sammie Everett Carroll, have and recover of the defendant, Consolidation Coal Company, Workmen's Compensation benefits at the rate of $47.00 per week for 300 weeks commencing December 27, 1969. The plaintiff will also have and recover of the defendant $53.50 for medical expenses incurred by the plaintiff before the defendant offered to furnish medical attention."

We affirm the District Judge's findings.

**4. Carvin Seiber.**

Carvin Seiber was forty-two years old at the time of trial. He apparently had no formal education, and can neither read nor write. He has a wife and five children and has lived all his life "up there in the hollow, up there in the mountains." His house is owned by the land company. A coal stove provides its heat. He has worked as an underground coal miner since he was seventeen years old. He was laid off in March of 1970 when defendant's Devonia Mine was closed down. He had been having breathing difficulties for some time prior to the mine closing. He received unemployment compensation for some months and had planned to return to work at the defendant's Tackett Creek Mine but when the time came he did not think he could resume work in the coal mines.

On August 12, 1970, he was examined by Dr. William K. Swann. Dr. Swann testified:

"He [Seiber] has a disease of emphysema bronchitis, chronic obstructive lung disease, and I have had run volume determinations done on him that make me know that he has a significant amount of this disease, enough disease so that he cannot work as a laborer. That is a lot of disability for a man, I guess, who don't know how to do anything but a laborer, but he could do sedentary work, walking around, at a normal pace."

In addition to such professional testimony, the plaintiff and his wife both quite graphically described his sufferings and disabilities consequent upon his disease. A doctor for the defendant company found that Seiber had pneumoconiosis but did not consider it sufficiently disabling to forbid his returning to work in the mines. The District Judge's opinion recites:

"This leads us to the consideration of the extent of his disability. This, as always, is a troublesome question. The doctors who have testified in the

case have made the task of the Court more difficult. One of the strange things about these cases is that reputable doctors will testify before a judge on a technical subject and express such widely divergent opinions about the question of disability and the extent thereof. About the only thing on which these doctors are in agreement is that Mr. Seiber is suffering from pneumoconiosis, which in lay language means coal dust disease.

"Doctor Rogers testified that plaintiff's lungs were clear to percussion and auscultation. He exhibited a dry cough. Apparently the doctor attached no significance to his cough. The Court does. On fluoroscopy the doctor noted there was excellent motion of the diaphragms; chest X-rays showed a light anterior bowing of the chest; the heart was normal size in shape; the diaphragms were somewhat low; there were P size nodules in the right upper, mid and midway lung fields on the left. This was categorized as coal worker's pneumoconiosis in category 1/1.

\* \* \*

"As previously indicated, Dr. Swann examined plaintiff on August 12, 1970. At that time, plaintiff was short of breath, wheezed, sneezed and coughed. Chest X-rays were made which showed nodular fibrosis in both lung fields. His diagnosis was silicosis.

"Doctor Swann made pulmonary function studies of his lungs. In the opinion of Dr. Swann, he is 100 percent disabled from engaging in underground coal mining work. Dr. Swann's pulmonary function studies show that he is also suffering with bronchitis and emphysema which are subsidiary to his main lung trouble diagnosed as silicosis. Plaintiff has small opacities in his lungs which are larger than the ordinary ones.

"Doctor Swann was of the opinion that plaintiff cannot work in dust and that his disability as a manual laborer

is also 100 percent. He is able to do sedentary work away from dust.

"The Court observed plaintiff while he was on the witness stand and, as heretofore indicated, he coughed frequently. Plaintiff's appearance does not indicate that he is a well man. We do not need the testimony of a chest expert to know that anyone who suffers with silicosis is not a well man.

"The Court fixes plaintiff's disability at 95 percent permanent partial disability."

We believe the District Judge's conclusions are supported by the evidence.

## 5. Dr. Swann's witness fee.

Counsel for appellant took a discovery deposition of Dr. Swann, in preparation for three of the cases we considered. Dr. Swann billed counsel for $450, $150 for each case. Defendant's counsel offered to pay him $126 for the one hour and ten minutes consumed in the taking of his deposition, believing that such an amount was adequate for Dr. Swann's time. We agree. Appellee's counsel do not argue that the suggested fee was less than adequate. The District Judge refused to enter the contest concerning Dr. Swann's fee.

■ We believe that the District Judge might well have settled this minor, but relevant, disagreement. We find no specific language in the Federal Rules of Civil Procedure although Rule 26(b) (4) (C) deals with allowances to experts. However, Dr. Swann was not sworn as an expert in the discovery deposition, but were we to use the above section and consider Dr. Swann an expert, the amount of $126 would be an adequate fee. If we are dealing with a matter of first impression, we are satisfied that in the interest of judicial economy this fee contest should be settled in this lawsuit. 28 U.S.C. § 1821; 8 Cyc. Fed.Proc. § 26.22 (3rd ed. 1968). We direct that an order be entered in the District Court fixing Dr. Swann's fee for the giving of a discovery deposition

in the three cases before us at the total amount of $126.00.

### 6. General.

We are aware that serious issues of fact are presented in all of these cases. Each of the plaintiffs worked in a coal mine until it was closed. Each testified that while they had been suffering from some of the discomforts and disabilities that attend the so-called "black lung" disease, they were not aware they were seriously diseased until they consulted Dr. Swann. Dr. Swann appears to regularly support claims for Workmen's Compensation for former coal miners. McCoy et al. v. Consolidation Coal Co., 443 F.2d 62 (6th Cir. 1971), (involving four former employees of Consolidation); Bray v. Consolidation Coal Co., 286 F.Supp. 1019 (E.D.Tenn.1968), aff'd, 416 F.2d 1 (6th Cir. 1969); Wormsley v. Consolidation Coal Co., 278 F.Supp. 698 (E.D.Tenn.1967), aff'd, 408 F.2d 79 (6th Cir. 1968); Lively v. Consolidation Coal Co., 273 F.Supp. 357 (E.D.Tenn.1967), aff'd, 406 F.2d 523 (6th Cir. 1969).

Many of these cases present a pattern not unlike the ones we now consider. The fact that Dr. Swann is not a member of the American Board for General Surgery nor of the American Board for Thoracic Surgery has been emphasized. We assume this is done to impair his asserted expertness in the field of medicine in which he appears to specialize. He came to Knoxville in 1949 as a member of a Knoxville Chest Group, formed by the United Mine Workers "for the purpose of studying disability in coal miners." His testimony was challenged by qualified medical specialists; the discovery of the cause of the plaintiffs' disabilities did not come to light until the mine where they had worked closed down. These men then applied for, and for varying periods of time received, unemployment compensation benefits. Applications for such benefits contained the employees' representations that they were then able and available for work. All of these matters were for the District Judge to consider and weigh and it was his province to make his own assessment of the credibility of the witnesses before him. The fact that these and other plaintiffs did not assert disabilities until their respective places of employment had shut down, might give rise to some wonder as to the genuineness of their claims; conversely, such evidence might indeed be accepted as consistent with a conclusion that a large percentage of those who have spent their strong years in the underground of coal mines are inevitably on the way to the disability which the District Judge found. While the only work of which they are capable continues available, they rise above the disabilities that attend the approach of the so-called "black lung."

The judgment in the District Court allowed recovery in the Seiber case of the sum of $53.50 for medical expense. Counsel for appellee concedes that no evidence was offered to support such item and says, "no claim is made for them in this case."

We have considered other points presented by appellant and find them without merit. The judgments of the District Court are affirmed in all respects except,

a) The fee of Dr. Swann for giving a discovery deposition in three cases is fixed at, and limited to, the sum of $126.00; and

b) The allowance of $53.50 for medical bill in the Seiber case is vacated.