AMERICAN CASUALTY INSURANCE COMPANY

*v.*

OLLIE MAE WHITE.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

JAMES K. MILLER, Morristown, for plaintiff in error.

TAYLOR & INMAN, Morristown, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a Workmen's Compensation case. The first question made by the appeal of the insurance carrier is that there is no evidence to support the Trial Judge's finding that Mrs. White had sustained a 25% permanent disability to her body as a whole by reason of injuries which admittedly fell within the contemplation of the Workmen's Compensation Statute, T.C.A. sec. 50-901 et seq.

Involved in the aforesaid question is the contention that the Court erroneously failed to take into consideration an award made two years previously upon an adjudication of a 25% permanent disability to her body as a whole because of a back injury received while working for a different employer.

■ With reference to the injury upon which the present claim is based, Mrs. White was employed by the Knoxville Poultry & Egg Company as a "chicken drawer"; that is, she removed the innards of the chicken by inserting her rubber gloved hand into its carcass and pulling the innards out. While performing this duty on February 18, 1959, a bone of the chicken cut through the rubber glove on her right hand and penetrated a blister thereon. This resulted in an infection which, according to the testimony of the doctor testifying in her behalf, led to blood poisoning and other physical complications upon which the Court based its finding.

There is no question but that Mrs. White suffered an infection. An infection of this kind results from an unusual fungus arising from the prosecution of this part

of the chicken business, which seems to be carried on in places which necessarily are, or become, damp.

Mrs. White was immediately referred by her employer to a well known medical clinic in Knoxville. The doctors there placed her in a hospital, gave her the standard treatments. But apparently she did not respond normally. She was given a minor operation which, in the opinion of these doctors, indicated that she did not have blood poisoning. Concededly, however, the infection had spread to the extent that they felt she should have another operation.

These doctors, and their clinic, and the hospital to which the doctors had sent her were all in Knoxville. She lived 42 miles away in Morristown. The treatments they had been giving her necessitated only a day or so confinement at the hospital at a time. During the interim she went to her home in Morristown.

Before daybreak of February 29 Mrs. White went from her home to the Doctors' Hospital in Morristown under circumstances hereinafter to be related. There Dr. Kinser, a Morristown physician who had treated her on a previous occasion was called in.

Dr. Kinser testified that the original infection on her finger had "spread to her entire hand, arm and shoulder" and had "become rampant". This hand and arm "were swollen a lot"; "the entire arm was affected"; she had blood poisoning. He has treated her from that time on. He describes in detail the treatment she was given.

Dr. Kinser states that in this swollen arm the circulation was poor. The arm had undergone a change of color; that the situation "necessitated the arm not being

moved". He explains that the treatment required by this condition cannot be administered "with active motion". So the hand and arm had to be immobilized. By reason of such immobilization the shoulder became "secondarily affected by the disease". It became a "frozen or—stiff shoulder".

All this, Dr. Kinser says, has resulted in a permanent disability to her right arm including the shoulder; that, in his opinion, she has "a permanent disability of approximately 25%" and that "her ability to perform her previous occupation is decreased by 25%"; that the disability should be treated as one to her body as a whole; that as a result thereof she cannot do but 75% of the manual labor which she could do before.

Mrs. White testifies that due to the condition of her arm, hand and shoulder she is hampered in any physical work she undertakes, including house work, to such an extent that she now has to employ her home laundry work; that she does not have much strength in her hand and can't get her arm above her head because of the condition of her shoulder.

Two doctors testifying for the Insurance Company fixed Mrs. White's disability to the body as a whole at from a maximum of 10% to a minimum of 2%, respectively. The Trial Judge said, however, that he thought Dr. Kinser was in a beter position to accurately estimate this disability. He, therefore, found the permanent disability to her body as a whole to be 25%. This Court is concluded by that finding supported, as it is, by material evidence.

The Insurance Company says, however, that the 25% disability to the body as a whole by reason of a back in-

jury received two years before should have been taken into consideration in computing the amount to which Mrs. White was entitled. Its insistence is that a failure to take the previous award into consideration is to give "compensation for disabilities that have in fact already been compensated for".

██ Where there has been an award under the statute for a permanent total loss of a member of the body, or of the use of the body as a whole, it is obvious, in the absence of a statute with reference to such a situation, that a subsequent award based upon a disability to that already completely lost member would in fact amount to a compensation for which the claimant has already been compensated in full. But that is not the situation existing in this case. Notwithstanding the fact that Mrs. White had received an award based on a previous permanent disability of 25% to her body as a whole, nevertheless, before the subsequent injury she was, in her debilitated condition after the first accident, able to do the work for which she was receiving a stated compensation. Since the subsequent injury involved here, however, to use the language of Dr. Kinser, she can do but 75% of that work. See *Knoxville Knitting Mills Company v. Galyon,* 148 Tenn. 228, 231-232, 255 S.W. 41, 30 A.L.R. 976.

The Insurance Company bases its insistence for a reduced award because of the previously received award upon *Black Diamond Collieries v. Deal,* 150 Tenn. 474, 265 S.W. 985. The decision in that case was controlled by Section 20 of the Workmen's Compensation Act as then drawn. Section 20 was entirely eliminated by the substitution of what is now Section 50-1027, T.C.A. Necessarily, *Black Diamond Collieries v. Deal,* supra, is not

in point.  See *Tomes v. Gray & Dudley Company,* 201 Tenn. 697, 301 S.W.2d 389, 391.

In *Tomes v. Gray & Dudley Company* the workman had been awarded compensation for the loss of four fingers.  In the suit that was under consideration he had subsequently lost the thumb of that same hand.  He was awarded compensation for the use of a hand, instead of compensation for the loss of the thumb.

This Court, after observing that there was no provision in the Workmen's Compensation Act which covers such a situation, referred to *Knoxville Knitting Mills v. Galyon,* supra, wherein it was pointed out that "the weight of authority prevails against a deduction on account of a previous injury, independent of a statutory provision prohibiting the same".

In making an award for the loss of the use of the hand, notwithstanding the previous award for the loss of four fingers, this Court observed in the Tomes case that with this thumb and the stub of his hand he had been able to earn the wages he was receiving until he lost the thumb, but that he had lost that use of his left hand when he lost the thumb.

The Tomes case by analogy is directly in point here, and is controlling.

This Court's conclusion is that the Trial Court, in computing the award for the 25% permanent disability resulting from the second accident, did not err in declining to take into consideration the 25% permanent disability resulting from a previous accident.

In the treatment of Mrs. White the services of two certain hospitals and a clinic were had, as were the serv-

ices of Dr. Kinser. The Insurance Company insists that it did not authorize these bills, is not liable therefor, and assigns as error the judgment of the Trial Court to the contrary.

One of these is the bill of $289 owed Doctors' Hospital at Morristown. It was incurred under the following circumstances,—after this injury on February 18, 1959, Mrs. White was fairly constantly under the treatment of doctors, and at the Knoxville Hospital, furnished by the Insurance Company, but her stay therein was but for a day or so. She, at the directions of these doctors, returned from Morristown almost daily for treatment.

On February 24, following surgery in the University of Tennessee Hospital, she was directed to return to Knoxville on February 26 and meet the doctor at St. Mary's. She did return, but this doctor did not fill the appointment. When she called him again she was directed to the University of Tennessee Hospital, and arrived there at 11:00 P.M. On the next day the doctor instructed her to go home and report the following Monday. This was on Friday. Mrs. White testified that the pain in her arm was continuously growing worse, but the doctor told her that she was unduly alarmed.

Mrs. White did return home and says that on Saturday night the pain was so intense that she walked the floor until almost daybreak. At that time she went to the Doctors' Hospital at Morristown. Here the treatment by Dr. Kinser commenced.

Mrs. White's testimony further is that after she had been in this hospital for perhaps two or three days a representative of the Insurance Company visited her there, and when he saw her hand, he told her that he had no

idea that it was that bad; that he approved her entry into the hospital and her calling the doctor; that if this doctor didn't help her he would get the finest in Knoxville. She is corroborated as to the occurrence of this conversation by another lady who, though a stranger to Mrs. White, was a patient at the time in the same hospital and in the same room. It is not denied by this representative.

The Court is of the opinion that under these circumstances the Trial Judge was correct in adjudging the Insurance Company liable for this hospital bill and for the professional services rendered by Dr. Kinser.

█ The remaining disputed claims are the University of Tennessee Hospital bill of $110.25 and the Knoxville Orthopedic Clinic of $60. Mrs. White's testimony with reference to these two bills is that after she was released from the Morristown Hospital the representative of the Insurance Company directed that she report to a specified doctor in Knoxville, and that she did this. She says that this doctor thought she should undergo another operation; that when she expressed reluctance, he said that before going ahead with the plan he would like for her to be examined by Dr. Stevens; that in the course of such examination by this doctor she was entered by him in the Knoxville Hospital and also, at his instance, there was rendered by the Knoxville Orthopedic Clinic the services for which its bill is claimed. Dr. Stevens was not a witness. The Trial Court accepted this testimony of Mrs. White and adjudged the Insurance Company liable for these bills. We are not able to say that there was any error in so doing.

The Court allowed Dr. Kinser's bill in the amount of $329.50. Upon the trial of the cause the attorney for

Mrs. White stated to the Court that $100 of this bill was charged by Dr. Kinser for testifying as an expert witness in this case.

■ It is said in behalf of Mrs. White that the motion for a new trial did not specifically complain as to the allowance of this fee. The Insurance Company was denying that it owed this bill. Mrs. White and the Court knew that. One of the grounds of the motion for a new trial is that there is no material evidence to support the verdict. In view of the fact that the Workmen's Compensation Act permits rather meager pleadings, *Ledford v. Miller Brothers Company,* 194 Tenn. 467, 253 S.W. 2d 552, coupled with the notice given the Court and the petitioner as to this issue, perhaps this insistence of Mrs. White should be overruled, though the question is certainly not without difficulty.

■ Our Workmen's Compensation Act does not authorize the payment by the employer for the charges made by a person because of his testimony as an expert witness. It is rather indicated by the text of 101 C.J.S. Workmen's Compensation sec. 823b, to which we are referred by Mrs. White's attorney, that such charge against the employer is not authorized in the absence of statute.

The judgment of the Circuit Court will be modified so as to eliminate the $100 charged by Dr. Kinser for appearing in Court as an expert witness. As so modified, the judgment of the Circuit Court will be affirmed, and the cause remanded for such further proceedings as may be appropriate. Costs will be adjudged against the Insurance Company.