INDUSTRIAL CARVING CO., INC.

*v.*

LESTER HURST.

447 S.W.2d 871

(*Knoxville,* September Term, 1969.)

Opinion filed November 12, 1969.

SAM JACK ANDERSON, Morristown, for appellant.

PORTER & PORTER, Newport, for appellee.

470

MR. SPECIAL JUSTICE ERBY L. JENKINS delivered the opinion of the Court.

This suit brought by Lester Hurst, hereinafter referred to as the employee, to recover certain benefits allegedly due him under the Workmen's Compensation Act. The trial court awarded the employee sixty-five (65%) percent permanent partial disability to his body as a whole and medical bills, and from this award, the employer appealed to this court.

The facts of the case are undisputed. The record discloses that the employee suffered a back injury in 1957 while in the employ of Forest Products Corporation, and was awarded maximum benefits under the Compensation Act for permanent total disability.

The employee could have taken a copy of the order allowing one hundred percent disability, and in all probability been granted relief from one of the ever increasing State or Federal relief agencies. But apparently he was a hardy man and not so inclined, and believing that a man must face with fortitude and resolution whatever vicissitudes the immediate future may bring forth,—else he is not a man—chose the hard road to restore himself to full health, and thus, through the magic of nature's healing powers aided by his will to work and the desire

to hoe his own row, without the help of some paternalistic government, and be rewarded by the fruits of the harvest at the end thereof, was restored to health, and became industrially whole again and re-entered the stream of the labor market. He did so by washing dishes, driving buses and doing everything that he could to make a living for himself. "The physician heals, Nature makes man well," and "Health lies in labor, and there is no royal road to it but through toil," and "Nature, time and patience are the three great physicians."

And so, being thus restored, he was working for the employer in 1968, and while employed by the Industrial Carving Company, the employee suffered a heart attack. The trial court held that he had sustained a sixty-five (65%) percent permanent disability to the body as a whole and awarded him a total of $12,976.89.

The facts in the case are undisputed with reference to the two injuries referred to; that is the one in 1957 wherein he was awarded one hundred percent disability, and the injury sustained in 1968 while working for the Industrial Carving Company. The first injury occurred while Hurst was pushing a floor truck loaded with materials; the subsequent injury arose while he was operating a machine used in the manufacture of furniture.

There is but one issue of law pertinent to this case: that is whether an employee, once having been adjudged permanently and totally disabled and having received full benefits therefor, can receive additional benefits for a subsequent unrelated injury occurring after the employee had returned to work.

It is conceded that the employee was a whole man again, doing a well man's job, who after the first injury

more than ten years before had completely recovered from his old injuries and was industrially "born again." The question is, is he entitled to the same protection under the Workmen's Compensation law as are his fellow workers?

The employer contends that an employee who has once been awarded maximum compensation for total permanent disability may not be awarded compensation for permanent partial disability resulting from a subsequent unrelated injury; that "legally" a person may not be more than one hundred percent disabled.

T.C.A. Section 50-1007(e) provides that for an injury to be permanently and totally disabling it must "totally incapacitates the employee from working at an occupation which brings him an income." Some courts interpret this to mean that a person must be prevented from working at his former occupation or an occupation closely related thereto. *Jones v. Cutler Oil Co.* (1959), 356 Mich. 487, 97 N.W.2d 74; *Hebert v. Ford Motor Co.* (1938), 285 Mich. 607, 281 N.W. 374; *Asplund Const. Co. v. State Industrial Commission* (1939), 185 Okl. 171, 90 P.2d 642. Other courts, not wishing to trouble themselves with such refinements, simply say that once a man has been classified as permanently and totally disabled he cannot, in law, be further disabled. *Van Tassel v. Basic Refractories Corp.* (1926), 216 App.Div. 774, 214 N.Y.S. 491; *Harrington v. Dept. of Labor & Industries,* (1941) 9 Wash.2d 1, 113 P.2d 518. This Court, likewise, does not wish to delve into such refinements; for we can find no justification for arbitrarily denying benefits to a man who, though once permanently and totally disabled, returns to his former occupation and suffers a subsequent injury, but allowing benefits to one who returns to work

in a distinctly different occupation and incurs a subsequent injury.

There is no reason for distinguishing between the two situations. The Tennessee Statute only says that an employee must not be able to work at "an occupation" which "brings" him an income. It says nothing about him not being able to return to his former occupation or the occupation which brought him an income.

To support his position that a Tennessee court would not go so far as to award additional benefits to one who has previously been adjudged totally and permanently disabled, the appellant relies upon *American Casualty Insurance Co. v. White* (1960), 207 Tenn. 294, 339 S.W.2d 15. By way of dictum, this Court there said:

"Where there has been an award under the statute, for a permanent total loss of a member of the body, or of the use of the body as a whole, it is obvious, in the absence of a statute with reference to such a situation, that subsequent award based upon a disability to that already completely lost member would in fact amount to a compensation for which the claimant has already been compensated in full."

Initially, such a statement would seem to preclude the recovery of additional benefits by an employee once he has been declared permanently and totally disabled. However, it is significant to note that the Court, in its opinion, cited *Tomes v. Gray & Dudley Co.* (1957), 201 Tenn. 697, 301 S.W.2d 389, and said it was controlling in the case under consideration.

Accordingly, Tomes would seem to be appropriate here. In that case the workman previously had lost four fingers on his left hand and was awarded compensation

based upon a ninety (90%) percent loss of the left hand. Approximately eight years later the claimant, while working for the same employer, lost his left thumb. He was awarded compensation based upon a one hundred percent loss of the use of his left hand, instead of compensation for the loss of the thumb only.

The manifest reason that this Court made an award for the loss of the use of the hand, notwithstanding the previous award for the loss of four fingers, was because with the thumb and the stub of his left hand the employee had been able to earn the wages he was receiving until he lost the thumb; but when he lost his thumb he lost that use of his left hand. With the loss of four fingers in the first accident the employee's remaining thumb and stub were usable only to the extent of ten (10%) percent of a normal hand. The employee, however, rehabilitated himself and what remained of his hand again became usable. Once more it was worth one hundred (100%) percent as a functional member. When he suffered the subsequent injury he lost this use of his rehabilitated hand and so an award of one hundred (100%) percent was proper.

The trend was started in Tennessee in 1923, in *Knoxville Knitting Mills Co. v. Galyon*, 148 Tenn. 228, 255 S.W. 41, 30 A.L.R. 976. In this case the employee had a part of three fingers on his left hand severed. Nineteen years later, while at work, he lost the entire hand. The employer sought to have deducted from the award the full value of the three fingers. The trial court refused and the employee was awarded payment for the entire hand. The Supreme Court of Tennessee upheld the award.

The same reasoning is applicable here. It is not inconceivable that an employee, though previously adjudged permanently and totally disabled and fully compensated therefor, may rehabilitate himself and return to work. In so doing he renews his wage-earning capacity and if he suffers a subsequent injury then he is deprived of this newly acquired capacity and should be compensated for such loss.

Also in point is the case of *Williams v. S. & W. Const. Co.* (1934), 167 Tenn. 84, 66 S.W.2d 992. There the employee sought compensation for the loss of an eye by a 1932 accident, although he had previously been paid full compensation by another employer for the permanent loss of the same eye due to a 1924 accident. In allowing full benefits for the second loss this Court said:

"It is generally recognized that the question of whether or not a present disability is or will prove permanent is frequently one largely of opinion, and the question is quite commonly determined by the courts. * * * on the basis of appearances at the time and opinion estimates of the apparent probabilities. Some disabilities are taken to be temporary and others to be permanent * * * when the facts are subsequently demonstrated to be otherwise."

Additionally, this Court indicated that recovery would be allowed upon a showing that the first injury had not, in fact, destroyed the entire usefulness of the part of the body involved or, as in this case, the entire body. We feel that such a showing has been made here.

All things considered, the employee did have an earning power at the time of his subsequent injury, irrespective of the previous adjudication of total permanent

disability. Industry saw fit to utilize this recouped earning capacity; therefore, it should compensate him for the loss he has suffered.

The employer's second contention is that since Hurst was paid the maximum benefits provided by the Act for his first injury, he is precluded from receiving further benefits due to his subsequent injury. We are not convinced that our Workmen's Compensation Act can be so narrowly construed.

In other words, we are being asked to say that once a man is declared one hundred percent disabled under the law, that he cannot by the great healing powers of nature rehabilitate himself and become a useful worker, not the subject of a dole or charity, or that if he does, he should be penalized under the law for such industry and effort. Is this Court going to say to such employee that if he re-enters industry and tries to make a living for himself, that there is "open season" on him, and that he is subject to the "law of the jungle;" that even though he is injured, he is "out in the cold," and will be denied the cover and protection of Workmen's Compensation?

We do not agree with the employer in this contention. To say otherwise would discourage the very thing that has made this country great; it would aid the trifling and the shiftless and would discourage employment and aid indolence, the mother of misery.

T.C.A. Section 50-1007(e) sets a sixteen thousand ($16,000.00) dollar limit for "an injury." The prescribed maximum relates only to the amount to be paid for the first injury. If there is a subsequent injury which is separate and distinct from the first, then the statute would seem to require that compensation be made for

the later injury. If there are two separate losses at two different periods of time, there should be two awards. See *Jones v. Cutler Oil Co.*, supra.

For the above reasons we must affirm the judgment of the trial court.

DYER, CHIEF JUSTICE, CRESON, and McCANLESS, JUSTICES, and BOZEMAN, SPECIAL JUSTICE, concur.