**C. A. HARLAN, d/b/a Harlan Chevron Service, Appellant,**

v.

**Roy McCLELLAN, Appellee.**

Supreme Court of Tennessee.

Oct. 30, 1978.

S. Morris Hadden, Kingsport, for appellant.

J. Kenneth Wright, William H. Cate, Wright & Cate, Kingsport, for appellee.

## OPINION

HENRY, Chief Justice.

In this Workmen's Compensation case, the employer has appealed the Chancellor's decision awarding appellee compensation for 25% permanent disability to the body as a whole, plus medical expenses and temporary total disability benefits. We affirm the Chancellor's award.

### I.

Appellee Roy McClellan, an employee at appellant's service station, injured his back on October 29, 1976 when he slipped on some grease and landed on the concrete floor and a grease rack. Although he was able to work for several days following the accident, he had to cease working for eleven months because of the injury to his back. Dr. Pannell, the treating chiropractor, testified that McClellan had a 30–40% disability to the spine and to the body as a whole as a direct result of the accident. He described the injury as "a disc lesion or an injury at L–5 with some nerve root pressure. . .

I think it is a functional disability due to involvement of the disc and a subluxation, pinching nerve." Dr. Pannell also stated that McClellan should avoid prolonged standing or lifting, as well as bending, stooping or twisting.

McClellan has suffered several back injuries during the past thirteen years. The most recent previous injury occurred in December 1974. The disposition of his workmen's compensation claim arising out of that injury is not clear from the record, but it appears that he settled the claim at a rate approximating a permanent disability of 7–8%. Dr. Pannell had also treated McClellan for the 1974 injury. In a letter to McClellan's counsel at that time, he diagnosed the injury as follows:

Symptoms: Muscle spasm, pain to palpotation (sic) at L–5, S–1. Pain and numbness in the right leg.

X–Ray: Disc Lesion (injury) at L–5, S–1. Subluxation Type I of L–5.

The patient . . . is, in my opinion, unable to left (sic) or tolerate long periods of standing. He has, as a direct result of the injury December 27, 1974, between 60% to 70% permanent disability to the spine.

Prior to this trial, Dr. Pannell did not recall having treated McClellan for the 1974 injury. When it was called to his attention on cross-examination, he stated that although his skill and the standards for determining the degree and permanence of disability were the same in 1974 and 1976, people can recover from seemingly permanent injuries and frequently must work in spite of their injuries. It was his opinion that McClellan had recovered from the 1974 injury since he had been able to return to work.

Appellant claims that there is no material evidence to support the Chancellor's award and that Dr. Pannell's testimony concerning McClellan's present disability cannot be relied upon to support the award because of his previous diagnosis. In addition, appellant claims that the finding of a permanent disability is erroneous because McClellan has been able to resume full-time employment.

## II.

Our cases consistently have held that "when an employer employs a workman he takes him as he is and assumes the risk of having a weakened condition aggravated by some injury which might not hurt or bother a perfectly normal, healthy person." *Modern Upholstered Chair Co. v. Russell,* 518 S.W.2d 519, 522 (1974), *Globe Co. Inc. v. Hughes,* 223 Tenn. 37, 42, 442 S.W.2d 253, 255 (1969).

Tennessee first recognized this policy in *Knoxville Knitting Mills Co. v. Galyon,* 148 Tenn. 228, 255 S.W. 41 (1923), in which the Court held that the employee could recover for the loss of his hand although he previously had received compensation for the loss of three fingers. In *Williams v. S. & W. Construction Co.,* 167 Tenn. 84, 66 S.W.2d 992 (1934), the trial court dismissed a claim for the loss of an eye because the employee previously had received full compensation from another employer for the permanent total loss of the same eye. The Supreme Court reversed, ruling that the employee was entitled to prove that he had some useful vision in spite of the award, and that his vision had been impaired by the current injury. In addition, the Court noted that the contractual relationship between an employer and an employee under the compensation law prevented an employer from relying on benefits received from a previous employer for a different accident. This reasoning was applied more recently in *McKamey v. Pee Wee Mining Co., Inc.,* 498 S.W.2d 94, 96–97 (1973). In that case, the Court upheld an award of 100% permanent disability to the body as a whole in spite of a previous award of 60% permanent disability from another employer.

In *Laughlin Clinic, Inc. v. Henley,* 208 Tenn. 252, 345 S.W.2d 675 (1961), the employee had a previous longstanding back condition and was wearing a brace at the time of her accident. Although she was able to work for two months following the accident, she had to cease working as the pain in her back increased. Since she had been able to perform her work satisfactorily prior to the accident, the Court rejected a claim that the award for 75% permanent disability should be reduced because of the previous back injury.

More recently, in *Modern Upholstered Chair Co. v. Russell,* supra, plaintiff had suffered a back injury and had received benefits for a 15% permanent disability in 1968. In 1970, she began working for the defendant and satisfactorily performed her work for three years. She was then switched to a more arduous job that resulted in a back injury. The Court held that the record supported an award for 30% disability upon the physician's testimony that she had a "25 to 30 percent permanent partial disability to the body as a whole · . . .. another 10 to 15 percent on top of the previous 15 percent" disability from the prior injury. Id. at 523. Similarly, in *Employers-Commercial Union Companies v. Taylor,* 531 S.W.2d 104 (1975) the employee suffered a back injury requiring disc surgery and was awarded compensation for a 50% permanent disability. Four years later, while working for the same employer, his back was injured again and the injured disc was removed. This Court, speaking through Justice Cooper, upheld the trial court's award for a 60% permanent disability.

The policy allowing compensation in spite of a previous determination of permanent disability to the same member encourages rehabilitation and re-employment. As the Court pointed out in *Industrial Carving Co. Inc. v. Hurst,* 223 Tenn. 469, 447 S.W.2d 871 (1969):

> All things considered, the employee did have an earning power at the time of his subsequent injury, irrespective of the previous adjudication of total permanent disability. Industry saw fit to utilize this recouped earning capacity; therefore, it should compensate him for the loss he has suffered. 223 Tenn. at 475–76, 447 S.W.2d at 873

The Court went on to note that an employee who rehabilitates himself and returns to work rather than relying on public relief should not be penalized for his rehabilitation or discouraged from re-entry into the

644

work force by the denial of benefits for subsequent injuries.

■ These decisions make it clear that McClellan's previous injury does not preclude an award for disability resulting from his current injury.

### III.

■ As frequently noted, this Court's review of factual issues is limited to whether there is material evidence to support the decision below. Thus, even if the evidence preponderates against the decision below, it will be upheld if there is any material evidence to support it. *Davis v. Gulf Ins. Group,* 546 S.W.2d 583, 585 (1977) and cases cited therein.

■ Appellant claims that there is no evidence to support the Chancellor's determination of a 25% permanent disability and that the finding of a disability is erroneous because McClellan has been able to resume full time employment.

Dr. Pannell's testimony concerning McClellan's current disability provides material evidence in support of the Chancellor's award. Although his previous diagnosis assigned a higher percentage of disability for identical injuries, he testified that McClellan had recovered from the 1974 injury since he had been able to resume working without pain.

In *Williams v. S. & W. Construction Co.,* 167 Tenn. 84, 66 S.W.2d 992 (1934), the Court stated:

It is generally recognized that the question of whether or not a present disability is or will prove permanent is frequently one largely determined by the courts, or by the interested parties for themselves, on the basis of appearances at the time and opinion estimates of the apparent probabilities. Some disabilities are taken to be temporary and others to be permanent, so agreed or so determined, when the facts are subsequently demonstrated to be otherwise. 167 Tenn. at 87, 66 S.W.2d at 993

McClellan also testified that he had recovered from his previous injury and had experienced no trouble with his back while working at the service station. He stated, however, that he no longer is able to do hard physical labor. When asked about his present work as a truck driver, he testified:

A. Well, it's painful, because you are jarred around a lot in a truck. And my back . . . it just tears me up, it hurts real bad. I get my wife to massage my back and put a heat pad on it every night.

Q. What about your right leg?

A. Well, it bothers me more now than it ever did, really.

■ This record offers material evidence in support of the Chancellor's award. Thus, McClellan's subsequent employment as a truck driver is irrelevant. Although employment after an injury is a factor that may be considered in determining permanent *total* disability, a 25% permanent disability obviously does not preclude all types of work. To reduce or disallow partial benefits on the basis of a subsequent resumption of work would penalize the employee and discourage re-employment.

The judgment is affirmed.

FONES, COOPER, BROCK and HARBISON, JJ., concur.